[Civ. No. 970.  Second Appellate District.—July 21, 1911.]

ANNA M. EDWARDS, Respondent, v. J. C. BROCKWAY et al., Defendants; THE UNITED STATES FIDELITY AND GUARANTY COMPANY, a Corporation, Defendant-Appellant.

STREET SUPERINTENDENT OF SAN DIEGO—DUTIES UNDER CITY CHARTER. Under the provisions of the freeholders' charter of the city of San Diego, approved in 1899, the board of public works has the control of the streets and of all improvements and repairs thereof, subject to city ordinances, and the superintendent of public streets is not charged with the improvement or repairs thereof, otherwise than as specially directed so to do by a city ordinance or an order from the board of public works. He is charged with the duty to see that the laws, ordinances, orders and regulations relating to public streets and highways be carried into execution, and to superintend the cleaning of streets, and keep himself informed of their condition.

ID.—ALLEGED NEGLIGENCE—IMPROVEMENT OF AVENUE TO GRADE—UNIMPROVED STREET—KNOWLEDGE OF DANGER—NONLIABILITY ON BOND. Where the superintendent of streets of San Diego is charged with alleged negligence on his official bond, on the ground that after the acceptance of an improvement of an avenue to grade, an unimproved street crossing the same was left in a dangerous condition, the fact that he had knowledge of such dangerous condition cannot make him liable on his official bond for the injury of one who fell from the unimproved street to such improved street, in the absence of any order or direction to him to improve such unimproved street or to remove such danger.

ID.—GENERAL MUNICIPAL CORPORATION ACT INAPPLICABLE.—The general municipal corporation act, though referring to cities of the same class as San Diego, organized thereunder, is inapplicable to a city organized under a freeholders' charter.

ID.—INAPPLICABILITY OF VROOMAN ACT TO OFFICIAL BOND—NEGLIGENCE NOT SHOWN.—Where it does not appear that the avenue was improved under the Vrooman Act, and it is made to appear that the street superintendent had no authority to make repairs at the expense of the city without special authority, the Vrooman Act cannot apply to liability on his bond.

ID.—VALIDITY OF BOND NOT PASSED UPON.—It is held that in view of the disposition of the appeal, it is unnecessary to pass upon questions raised as to the validity of the bond.

ID.—MOTION TO DISMISS APPEAL.—Where a motion by the respondent to dismiss the appeal was adversely passed upon by the supreme

court before the transfer of the cause to this court, its ruling must
be deemed a final disposition of the motion, and it cannot be
renewed in this court.

APPEAL from a judgment of the Superior Court of San
Diego County. :W. R. Guy, Judge.

The facts are stated in the opinion of the court.

Lloyd S. Ackerman, for Appellant.

Patterson Sprigg, for Respondent.

SHAW, J.—Action to recover damages for personal in-
juries alleged to have been sustained by reason of official
negligence of defendant Brockway, who at the time was su-
perintendent of streets of the city of San Diego, the United
States Fidelity and Guaranty Company being impleaded as a
party defendant under an allegation that it was surety upon
his official bond.

Judgment went against both defendants, from which the
United States Fidelity and Guaranty Company alone prose-
cutes this appeal.

It appears that at the time of the injury to plaintiff, de-
fendant Brockway was the duly appointed, qualified and act-
ing superintendent of streets of the city of San Diego; that
he made and delivered a bond signed by himself as principal
and the United States Fidelity and Guaranty Company as
surety, conditioned ''that if the said J. C. Brockway shall
well and faithfully execute and perform all duties of such
office of street superintendent now required of him by law,
and shall well and faithfully execute and perform all the
duties of such office of street superintendent required by any
law to be enacted subsequently to the execution of this bond,
then this obligation is to be void, and of no effect; otherwise
to remain in full force and virtue''; that one Engebretsen,
a contractor, had, pursuant to the terms of a contract signed
by Brockway's predecessor in office, completed the grading of
a street in said city, known as Julian avenue; that at the
crossing of this avenue with Twenty-second street a cut was
made, leaving the surface of Julian avenue as gráded some
four or five feet below the surface of Twenty-second street,

thus leaving Twenty-second street in a dangerous condition for public travel; that Brockway accepted the work on Julian avenue as completed; that after said acceptance no lights or guards were placed at the point in Twenty-second street where it intersected Julian avenue; that at the time of the injury complained of Brockway, as such superintendent, had knowledge of the condition of Twenty-second street at the intersection thereof with Julian avenue; that on June 28, 1907, at about 7:30 P. M., while plaintiff was walking along Twenty-second street she walked or fell from said street into Julian avenue, by reason whereof she received the injuries for which she asks damages. It does not appear that Twenty-second street had ever been graded or otherwise improved, or that any sidewalks had been constructed thereon.

At the times in question the government of the city of San Diego was conducted under a freeholders' charter which provided for the establishment of a board of public works consisting of three commissioners. By section 8, chapter I, article V of the charter (Stats. 1889, p. 670), this board, subject to such ordinances as the common council might from time to time adopt, was given charge, superintendence and control of the streets and sidewalks belonging to the city, or dedicated to public use, and of all improvements and repairs thereof, and of all public works and improvements to be done by the city, as well as control of the manner of using the streets and sidewalks, and the power to prevent and remove obstructions therefrom, and the right to cause the prompt repair of streets and sidewalks. Section 11 of said chapter I (Stats. 1889, p. 672) authorized the board of public works, when deemed necessary, to appoint a superintendent of streets, "whose duty," as prescribed by said section, "it shall be to see that the laws, ordinances, orders, and regulations relating to public streets and highways be fully carried into execution, and that the penalties thereof are rigidly enforced; he shall superintend and direct the cleaning of streets, and shall keep himself informed of the condition of all public streets and highways, and also of all public buildings, lots, and grounds of the city, and report the same to the board, and shall perform such other duties as are hereinafter specified, or as may be required of him by this board." It does not appear that either the common council or the board of

public works at any time required of Brockway, as superintendent of streets, the performance of any other duties than those specified in this section. The only finding of the court touching the subject is as follows: "It is true that among the duties of the said J. C. Brockway, as such superintendent of streets, during all the times herein mentioned, were to see that the laws, ordinances, orders, and regulations relating to public streets and thoroughfares in the city of San Diego should be fully carried into execution, and that he keep himself informed of the condition of all the public streets, thoroughfares and highways of the said city of San Diego."

The alleged official negligence on the part of Brockway as superintendent of streets, as found by the court, consisted in this: That on June 24, 1907, "said J. C. Brockway had official and personal notice of the said condition of said Julian avenue at the corner of Twenty-second street; and it is true that said defendant J. C. Brockway failed and neglected to repair or place any protection whatsoever at the said corner of Julian avenue and said Twenty-second street, and it is true that he had official and personal notice of the said condition of said streets at least twenty-four hours prior to the injuries in said complaint complained of."

Under the provisions of the charter fixing his duties, the superintendent was not required, even though he had personal notice of the dangerous condition of the street, to repair or protect the same, unless the duty so to do was imposed upon him by ordinance adopted by the common council, or order made by the board of public works. It was his duty to see that the ordinances and orders relating to public streets be carried into execution. Neglect and failure to execute the same rendered him and the sureties upon his official bond liable in damages to those sustaining injuries by reason of such neglect. (*Doeg* v. *Cook*, 126 Cal. 213, [77 Am. St. Rep. 171, 58 Pac. 707]; *Merritt* v. *McFarland*, 4 Cal. App. 390, [88 Pac. 369].) But in the absence of such order or direction the superintendent had no authority to make the repairs or pay the cost thereof. A careful examination of the record discloses nothing whatever showing, or tending to show, that any ordinance, order, or regulation relating to streets in general, or to Twenty-second street, or its intersection with Julian avenue, had ever been adopted by the city council or the board

of public works, directing Brockway as superintendent to make any repairs at the intersection of Twenty-second street and Julian avenue, or place any protection whatsoever at the said corner of Julian avenue and Twenty-second street. In the case of *Merritt* v. *McFarland,* 4 Cal. App. 390, [88 Pac. 369], this court held the superintendent of streets of the city of Riverside liable for damages resulting from the dangerous condition of a street, but that decision was based upon the fact that it was conceded the superintendent was authorized by the city council to do the work, his negligence consisting in the fact that he failed to execute the order. So, too, in the case of *Doeg* v. *Cook,* 126 Cal. 213, [77 Am. St. Rep. 171, 58 Pac. 707], a like decision was had, based upon the fact that an ordinance had been adopted imposing upon the street commissioner the duty of keeping the particular street open and in good repair. The facts presented in the case at bar, however, wholly fail to bring it within the principle enunciated in these cases.

Respondent directs our attention to section 136 of the general law pertaining to municipal corporations of the first class (Gen. Laws of Cal. [Henning], p. 787), which fixes the duties of superintendent of streets. This section is almost identical with the provisions of the charter of the city of San Diego prescribing the duties of superintendent, and tested by the provisions of this section, conceding its application, it does not appear that Brockway failed to perform the duties imposed upon him by the same. However, said section was intended to apply only to cities of the first class organized under general laws, and the provisions thereof are not applicable to cities governed by freeholders' charters which, as here, fix the duties of such officer.

Our attention is also called to section 23 of the Vrooman Act (Gen. Laws of Cal. [Henning], p. 1326), which provides that, "if, in consequence of any graded street or public highway improved under the provisions of this act, being out of repair and in condition to endanger persons or property passing thereon," no recourse for damages suffered shall be had against the city; "but if such defect in the street or public highway shall have existed for the period of twenty-four hours or more after notice thereof to said superintendent of streets, then the person or persons on whom the law may

have imposed the obligations to repair such defect in the street or public highway, and also the officer or officers through whose official negligence such defect remains unrepaired, shall be jointly and severally liable to the party injured for the damage sustained; provided, that said superintendent has the authority to make said repairs, under the direction of the city council, at the expense of the city.'' No facts are presented bringing the case within the provisions of this section. Twenty-second street does not appear to have ever been improved or sidewalked at all; nor can it be said upon this record that Julian avenue was graded or improved under the provisions of this act (Vrooman Act). Moreover, it is not made to appear that the superintendent had authority to make repairs under the direction of the city council, the board of public works, or otherwise, at the expense of the city.

We are clearly of the opinion that the record discloses no facts showing that Brockway was guilty of official negligence as superintendent of streets, or that he failed and neglected to perform any official duty imposed upon him either by law, ordinance, order, or regulation of his superiors. Hence, there was no breach of the condition of the official bond given by the United States Fidelity and Guaranty Company, appellant herein.

Appellant urges several grounds upon which it is claimed the bond is void. Inasmuch, however, as the judgment must be reversed for the reasons given, we deem it unnecessary to discuss the points.

The motion of respondent to dismiss the appeal was heard by the supreme court prior to the transfer of the case to this court, and an order made denying the motion. Such ruling must be deemed a final disposal of the motion.

Judgment reversed.

Allen, P. J., and James, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 18, 1911.