[Civ. No. 2010.   Third Appellate District.—August 11, 1919.]

JENNIE E. DILLWOOD, Appellant, v. W. H. RIECKS et al., Respondents.

[1] COUNTIES—NATURE OF ORGANIZATION—STATUS AS COMPARED WITH MUNICIPAL CORPORATIONS.—The legal status of a county is not the same as that of a municipal corporation.   A county is a governmental agency or political subdivision of the state, organized for purposes of exercising some functions of the state government, whereas a municipal corporation is an incorporation of the inhabitants of a specified region for purposes of local government.

[2] ID.—NATURE OF FUNCTIONS OF—LIABILITY FOR NEGLIGENCE.—The decision in *Chafor* v. *City of Long Beach,* 174 Cal. 478, governing the liability of municipal corporations for injuries resulting from its negligence in the exercise of other than governmental functions, is not controlling where a county is involved.   Counties being but agencies of the state, their functions are exclusively governmental and are such only as are imparted to them by the state.

[3] ID.—PURCHASE OF PROPERTY—NATURE OF HOLDING.—In conferring power upon the board of supervisors to purchase land for "public pleasure grounds, public parks, and other public purposes and

to take care of and manage the same," the purchase is for the benefit of the people of the state and not exclusively for the people of the county; and property so acquired is held by the counties as agencies of the state.

[4] ID.—NEGLIGENCE BY PUBLIC OFFICERS—LIABILITY FOR.—Where the power to do an act exists, though its performance is left to the discretion of the officer, if he acts in execution of such discretion his liability would be the same as in the discharge of a mandatory duty, and if he performs the act or discharges the duty in a negligent manner, he would be liable in an action for damages by a person injured thereby.

APPEAL from a judgment of the Superior Court of San Joaquin County. J. A. Plummer, Judge. Reversed.

The facts are stated in the opinion of the court.

Gordon A. Stewart and Lawrence Edwards for Appellant.

Charles Light and H. C. Stanley for Respondents.

CHIPMAN, P. J.—This is an action to recover damages for the loss of plaintiff's horse, alleged to have perished by fire, on June 14, 1916, through the negligence of defendants. The defendants, other than defendant Quail, are sued as members of the board of supervisors of San Joaquin County and as individuals. Defendant Quail is sued as county surveyor and in his individual capacity. It is alleged in the amended complaint that plaintiff is the owner of a stallion named "Ishmael" of the value of five thousand dollars; that on the day above mentioned and some time prior thereto plaintiff "had kept said stallion in a stall at the county fair grounds. That upon said fair grounds there is a race-track and stables for the care of horses using said race-track."

Paragraph IV is as follows: "That during all the times herein mentioned, the said fair grounds was·and now is, the property of the county of San Joaquin, and was and is managed and controlled by said defendants, and is owned and held by the county for the holding of county fairs, and to be rented from time to time for the holding of exhibitions in motor and horse racing, fairs and public exhibitions of various kinds, for which a charge is made and collected by

4. Liability of county boards to private individuals, note, 95 Am. St. Rep. 80.

the County of San Joaquin from said parties. That the horse-stalls on said fair grounds are likewise rented to divers persons to be used by them in the care of horses trained by them on such race-track of said fair grounds, and for the use of which horse-stalls, a charge of One and 50/100 ($1.50) Dollars, a month is made for each stall rented as aforesaid. That the said horse 'Ishmael' was on the said 14th day of June, 1916, in a stall on said fair grounds, for the use of which stall said charge of One and 50/100 ($1.50) Dollars, was made and collected by the County of San Joaquin.

"That the said defendants, by their agents and employees on the 14th day of June, 1916, set fire to and burned the grass, then standing around and near the stall in which plaintiff's horse was then standing, and carelessly and negligently permitted said fire to be communicated with said stall setting the same on fire thereby destroying said horse, to the damage of the plaintiff in the sum of Five Thousand ($5,000.00) Dollars."

It is alleged that the plaintiff duly filed with the board of supervisors a claim for damages for the loss of said horse, which was by the board refused payment. The complaint is verified. A general demurrer to the complaint was overruled and defendants answered denying most of the averments of the complaint. Defendants "admit that horse-stalls on said fair grounds are rented to divers persons to be used by them in the care of horses trained by them on such race-track of said fair grounds, and for the use of which a small charge of $1.50 per month is made for each stall rented as aforesaid, but allege that said sum of $1.50 is used exclusively in keeping up the track used by the occupants of said stalls free of charge; and without profit to the County of San Joaquin."

The cause was tried by the court without a jury. The court made findings as follows: "II. That on the fourteenth day of June, 1916, plaintiff was the owner of a five year old standard bred pacing stallion named 'Ishmael,' of the alleged value of $5000.00; III. That on said last named date and for some time prior thereto, the said plaintiff had kept said stallion in a stall at Agricultural Park, commonly known as the County Fair Grounds, or race-track grounds; that upon said Agricultural Park there is a race-track and stalls for the

care of horses using said race-track; IV. That during all the times herein mentioned the said Agricultural Park was and now is the property of the State of California, and that the Board of Supervisors of the County of San Joaquin during all of the times herein mentioned did exercise a control over same as the agents of the State of California in a public and governmental capacity, and that the County of San Joaquin rented a stall upon said Agricultural Park to said plaintiff for the rental of $1.50 per month, and that the said stallion 'Ishmael' was in said stall on the fourteenth day of June, 1916, and that the rent for said stall was paid to the County of San Joaquin by said plaintiff; That the grass standing around and near said stall was on the fourteenth day of June, 1916, set fire to and burned by certain persons confined in the county jail of San Joaquin County as prisoners acting under the direction of certain employees and officers of the Highway Maintenance Department of the County of San Joaquin, and said county prisoners and employees of the said County of San Joaquin carelessly and negligently permitted said fire to become communicated with said stall, setting the same on fire and thereby destroying said horse."

As conclusions of law the court found: I. "That said Board of Supervisors had no power or authority to manage and control said Agricultural Park except as agents of the State of California, and had no power or authority whatever to rent said stall to said plaintiff, or to permit said stallion, Ishmael, to be kept in said stall or in said Agricultural Park; II. That said plaintiff is not entitled to take anything by said action."

Judgment accordingly passed for defendants, from which, plaintiff appealed, and brings the record here on a bill of exceptions.

Appellant specifies the following grounds in support of her contention that the judgment is against law: 1. That while the evidence shows that plaintiff's horse was destroyed through the carelessness of the employees of the county of San Joaquin, the court held the county not liable; 2. That while plaintiff's horse was destroyed through the negligence of persons acting under the instructions of certain officers of the county, the court held that such officers were neither liable as officers nor as individuals; 3. That the court failed to find the value of the horse Ishmael.

There is no controversy as to the facts. It was alleged that the county became the owner "by a grant deed conveyed to the County of San Joaquin, during the year 1911, 85.65 acres of land and being the property commonly known as 'Agricultural Park' and also as the 'County Fair Grounds' and being the same property upon which the plaintiff's horse was destroyed by fire." It is alleged in the complaint that these grounds were "managed and controlled by said defendants, and is owned and held by the county for the holding of county fairs, and to be rented from time to time to private parties for the holding of exhibitions in motor and horse racing, fairs and public exhibitions of various kinds."

It appeared that by resolution of the board of supervisors all moneys received for rent should be placed in a fund to be called "Agricultural Park Fund" and was to be used in the care and maintenance of the grounds. The particular purpose for which the board of supervisors made the purchase does not appear. By subdivision (6) of section 4041 of the Political Code, the board is given power "To purchase land for public pleasure grounds, public parks and other public purposes and to take care of, manage and control the same." It must be presumed that in purchasing this land the board exercised its power to accomplish one or more of the objects contemplated by the statutory authority given to it. Furthermore the pleadings and the evidence show that the land has been devoted to public purposes—the holding of "county fairs, exhibitions in motor and horse racing, fairs and public exhibitions of various kinds." It is not contended that the small charge for the use of the stalls or for the use of the grounds for fairs and exhibitions was for profit or for purposes other than as contributions toward the care and maintenance of the park. It appeared that on the day of the accident defendant French, a member of the board of supervisors, who seems to have had charge of these grounds for the board, gave directions to have the prisoners held in the jail go to the park and burn the dry grass, concededly a proper thing to have done. Section 4041 of the Political Code authorized the board to make such use of "convicted prisoners in the county jail." The burning of the grass was done under the immediate supervision of defendant Quail, who had general charge of the prisoners for all work done by them.

Appellant's principal contention is that the liability of the county is the same as that of a municipal corporation, a city, or town; and viewed in that light the county or its officers were liable for the reason that the acts done in the management and care of the park in question were done by the officers in a proprietary capacity and not in the exercise of governmental functions; citing *Chafor* v. *City of Long Beach,* 174 Cal. 478, [Ann. Cas. 1918D, 106, L. R. A. 1917E, 685, 163 Pac. 670].

[1] Appellant's major premise, that the legal status of a county is the same as that of a municipal corporation, is not sustained by reason or authority. Law-writers and the courts have very clearly pointed out the distinction between the two organizations. The supreme court thus dealt with the question in *People* v. *McFadden,* 81 Cal. 489, [15 Am. St. Rep. 66, 22 Pac. 851]: "It is clear that the constitution does not hold counties to be municipal corporations, or 'corporations for municipal purposes'; but so far as they are to be regarded as corporations at all, they are 'political corporations.' And this is in harmony with the common acceptation of the terms 'municipality' or 'municipal corporation,' as used in the common and written law of both England and America time out of mind. This view is also in harmony with those provisions of the statutes and codes which define counties to be 'bodies politic and corporate' and also with the decision of this court, made before the adoption of the constitution, when it declared that a county is not a municipal corporation within the meaning of that term as used in the Political Code." The following terse statement is found in *County of San Mateo* v. *Coburn,* 130 Cal. 636, [63 Pac. 80]: "A county is a governmental agency or political subdivision of the state, organized for purposes of exercising some functions of the state government, whereas a municipal corporation is an incorporation of the inhabitants of a specified region for purposes of local government." In *Reclamation Dist. No. 1500* v. *Superior Court,* 171 Cal. 672, 679, [154 Pac. 845, 848], the court said: "The counties are governmental agencies of the state, and the property intrusted to their governmental management is public property. The proprietary interest in such property belongs to the public, and if there be a legal title in the county, it is a title held in trust for the whole people. (Citing cases.) In

the absence of constitutional restrictions, the legislature has full control of the property held by the counties as agencies of the state and may dispose of that property without the consent of the county, or without compensating it.''

In *Hersey* v. *Neilson et al.,* 47 Mont. 132, [Ann. Cas. 1914C, 963, 31 Pac. 30], the authorities will be found collected to the proposition that counties are political subdivisions of the state for governmental purposes. The doctrine is fully stated in *Sacramento* v. *Chambers,* 33 Cal. App. 142, [164 Pac. 613]. It is also clearly set forth in 7 R. C. L., p. 925.

The supreme court of Kansas, in *Silver* v. *Board of Commissioners of Clay County,* 76 Kan. 228, [91 Pac. 55], thus states the principle: ''It is well established that a county is an involuntary corporation for governmental purposes, and is in no sense a business corporation. That the powers and obligations of the county are such only as the law prescribes, or as arise by necessary implication therefrom. Cities, however, in this state are municipal corporations, and neither their powers nor obligations are so restricted, and decisions as to their liability for negligence have no application.'' Finally, ''the several counties as they now exist are hereby recognized as legal subdivisions of this state.'' (Const., art. xi, sec. 1.)

[2] It results from the foregoing that the decision in *Chafor* v. *City of Long Beach,* 174 Cal. 478, [Ann. Cas. 1918D, 106, L. R. A. 1917E, 685, 163 Pac. 670], relied upon by plaintiff, is not controlling where a county is involved. Necessarily, counties being but agencies of the state, their functions are exclusively governmental and are such only as are imparted to them by the state. [3] In conferring power upon the board of supervisors to purchase land for ''public pleasure grounds, public parks and other public purposes and to take care of and manage the same,'' the purchase is for the benefit of the people of the state and not exclusively for the people of the county; and, as was said in *Reclamation Dist. No. 1500* v. *Superior Court, supra,* ''property so acquired is held by the counties as agencies of the state.''

Whether or not the officers connected with the burning of this grass are individually liable presents a more difficult question. In *Doeg* v. *Cook,* 126 Cal. 213, [77 Am. St. Rep. 171, 58 Pac. 707], it was said that ''the very decided trend

of modern decisions is to hold such officers liable for acts of nonfeasance, or for the negligent performance of a duty where the duty is plain, where the means and ability to perform it are shown, and when the performance or nonperformance, or the manner of its performance, involves no question of discretion. In short, where the duty is plain and certain, if it be negligently performed, or not performed at all, the officer is liable at the suit of a private individual especially injured thereby." In *Taylor* v. *Manson,* 9 Cal. App. 382, 387, [99 Pac. 410], the rule as stated in *Doeg* v. *Cook* was applied. In the case of *Edwards* v. *Brockaway,* 16 Cal. App. 626, [117 Pac. 787], the defendant Brockaway was held not liable, for the reason that there were no facts showing that Brockaway "was guilty of official negligence as superintendent of streets, or that he failed and neglected to perform any official duty imposed upon him either by law, ordinance, or order, or regulation of his superiors." In *Doeg* v. *Cook* the court quotes approvingly from Shearman and Redfield on Negligence (third edition, section 156), where the rule is thus given: "The liability of a public officer to an individual for his negligent acts or omissions in the discharge of official duty depends altogether upon the nature of the duty of which the neglect is alleged. Where the duty is absolute, certain and imperative, involving merely the execution of the set task—in other words, is merely ministerial—he is liable in damages to anyone specially injured, either by his omitting to perform the task, or by performing it negligently or unskillfully. On the other hand, where his powers are discretionary, to be exercised or withheld according to his judgment as to what is necessary or proper, he is not liable to any private person for a neglect to exercise those powers, nor for the consequences of a lawful exercise of them, where no corruption or malice can be imputed, and he keeps within the scope of his authority."

The early case of *Huffman* v. *San Joaquin County,* 21 Cal. 426, was an action for damages resulting from want of proper repairs to a bridge. The statute at that time devolved upon boards of supervisors the management and control of bridges in their respective counties and upon the road overseers of the county the duty of keeping bridges on public highways in repair. In sustaining a demurrer to the complaint the court said: "If any remedy exists for injuries resulting from neg-

lecting to keep such bridges in repair, it must be sought against the road overseers or supervisors personally.''

In *Hover* v. *Barkhoof*, 44 N. Y. 113, it was held that one who assumes the duties, and is invested with the powers of a public office, is liable to an individual who sustains special damage by a neglect properly to perform such duties.

Relying upon the distinction made between the discharge of duties plainly and certainly devolved upon the officer, and duties which he may or may not perform at his discretion, it is contended that in the present case the duty to burn the grass as a preventive of damage which might otherwise accrue was discretionary and not compulsory, and hence, under the decision in *Doeg* v. *Cook, supra,* and the rule as stated by Shearman and Redfield, *supra,* the defendants are not individually liable.

[4] The cases involving the question are generally cases arising from the neglect to do some act—cases of nonfeasance rather than misfeasance. It seems to us quite clear that where the power to do the act exists, though its performance is left to the discretion of the officer, if he acts in execution of such discretion, his liability would be the same as in the discharge of a mandatory duty, and if he performs the act or discharges the duty in a negligent manner, he would be liable in an action for damages by a person injured thereby. Whether the duty performed be discretionary or compulsory there is no reason why like consequences should not follow the negligent performance of the duty.

The rule, as stated by Shearman and Redfield and in *Doeg* v. *Cook,* has reference more particularly to acts of nonfeasance, where it was entirely discretionary with the officer to do or not to do the act. It is perhaps a debatable question whether or not the duty ''to care for, manage, and control'' this agricultural park did not impose upon the supervisors a plain and certain duty to burn this dry grass in order to prevent damage to the property itself or to individuals using it, still, having determined that it should be burned and having undertaken to do it, it was their duty to see that the work was not done in a careless and negligent manner, failing in which a liability arose for damages resulting from their negligence.

There was evidence tending to show that the management and care of the park grounds were being exercised by defend-

ant, Supervisor French, under direction of the board of supervisors; that the "chain-gang," composed of prisoners in the county jail, was placed in the charge and control of defendant, Surveyor Quail, when put to work on the highways or elsewhere; that Fred E. Smith was the acting assistant highway maintenance engineer and was given instruction by defendant Quail to go to the fair grounds and burn the grass; that Engineer Smith communicated these instructions to James McAfee, the guard of the "chain-gang" and directed him to take the "chain-gang" to the grounds and burn the grass, and that the work was finally done under the immediate direction of McAfee. The court found that the grass was "burned by certain persons confined in the county jail of San Joaquin County, as prisoners, acting under the direction of certain employees and officers of the Highway Maintenance Department," of the county, and through their negligence plaintiff's horse was burned to death. The view taken by the court "that said plaintiff is not entitled to take anything by said action" will account for its failure to make findings of fact as to the defendants' connection with the accident, either as officers of the county or as individuals. The court, doubtless, held, as is now urged as the law by respondents, that no liability of defendants, either as officers or as individuals, was shown. This, we think, was error. There should have been findings of fact showing the acts done by the defendants, and each of them, and the circumstances attending the acts. It would then be possible to draw the correct conclusion of law from such acts as to the liability or nonliability of defendants.

The judgment is reversed and a new trial ordered.

Hart, J., and Burnett, J., concurred.