[Civ. No. 2816. Third Appellate District.—May 17, 1924.]

## THOMAS D. WATSON, Petitioner, v. F. H. GREELY, as Auditor, etc., Respondent.

**[1]** COUNTIES—CHARACTER OF AS AGENCIES—POWERS.—Counties, as political entities or subdivisions of the state, are governmental agencies, all the powers and functions of which "have a *direct* and *exclusive* reference to the general policy of the state, and are, in fact, but a branch of the general administration of that policy."

**[2]** ID.—RESUMPTION OF DELEGATED POWERS—CONSTITUTIONAL LAW— DELEGATION OF POWERS TO COUNTIES.—"The state may, through its legislature, and in the exercise of its sovereign power and will,

1. See 7 Cal. Jur. 387; 7 R. C. L. 923.
2. See 7 R. C. L. 926.

in all cases where the people themselves have not restricted or qualified such exercise of that power, apportion and delegate to the counties any of the functions which belong to it," and, "on the other hand, the state may take back and itself resume the exercise of certain functions which it had delegated to those local agencies."

[3] ID.—HIGHWAYS—POWER OF STATE.—The state has the power to take over the exclusive control of the matter of the construction and maintenance of all public highways in the state, whether they be trunk or main highways or so-called county roads; and under section 36 of article IV of the constitution the legislature is empowered, through the appropriate branch of its administrative machinery, to declare any county road a state highway, and thus take sole supervisory control over it.

[4] ID.—COUNTY ROADS—HIGHWAYS—STATE.—The state is itself the sole judge of whether a certain county road should be made a state highway or a part of the state highway system and its conclusion as to that matter could not be successfully challenged.

[5] ID.—EXTENSION OF COUNTY ROADS BETWEEN COUNTIES—LEGISLATURE—SECTION 4, ARTICLE XI, CONSTITUTION.—There is no provision of the constitution which prohibits the legislature from authorizing two or more counties, contiguously situated to each other, to jointly build and maintain highways through their respective counties, or, indeed, from authorizing one county to extend, when public convenience demanded it, and at its own expense, any of its own county roads into and over certain limited portions of an adjoining county and thus connect with a road in the latter county; and there is to be found in section 4 of article XI of the constitution no implied, much less an express, inhibition against legislation authorizing such an arrangement between two counties.

[6] ID.—SECTION 4, ARTICLE XI, CONSTITUTION—REQUIREMENTS OF.—Section 4 of article XI of the constitution, dealing with a uniform system of county government, is mandatory in its terms and the legislature is thereby imperatively required to establish, as an essential part of the machinery of the state government and as in aid of the administration thereof, a system of county governments, which shall be uniform throughout the state, which last clause means "an organized plan or scheme in keeping with which the constituent parts thereof are rendered similar and are connected and combined into one complete, harmonious whole, and it necessarily imports both a unity of purpose and entirety of operation."

---

3.  See 13 Cal. Jur. 338; 13 R. C. L. 79, 163.
6.  See 7 Cal. Jur. 423.

[7] ID.—LEGISLATIVE DELEGATION OF POWERS TO COUNTIES—SECTION 4, ARTICLE XI, CONSTITUTION. — There is nothing in section 4 of article XI of the constitution which limits or restricts the legislature in the matter of committing to counties the power to administer such of its own functions and policies as it has the right to delegate or which it is not forbidden so to delegate by some other mandate of the organic law; in other words, said section of the constitution does not pretend to designate or specify the *quantum* of the governmental powers of the state which shall be delegated to counties, nor does it point out or purport to declare what particular functions or policies included within the sovereign powers of the state government shall be conferred upon counties.

[8] ID.—SECTION 24, ARTICLE IV, AND SECTION 11, ARTICLE I, CONSTITUTION—MANDATORY CHARACTER OF.—The provisions of section 24 of article IV of the constitution that "Every act shall embrace but one subject, which subject shall be expressed in its title," and of section 11 of article I of the constitution that "All laws of a general nature shall have a uniform operation," are mandatory and must be followed with substantial strictness.

[9] ID.—SUBDIVISION 12, SECTION 2639, POLITICAL CODE—NONVIOLATION OF SECTION 24, ARTICLE IV, CONSTITUTION.—Section 2639 of the Political Code, in so far as is concerned subdivision 12 thereof which permits one county, with the consent of the other, to extend, at its own expense, one of its roads so as to connect with a road in the adjoining county, is not violative of section 24 of article IV of the constitution.

[10] ID.—SUBDIVISION 12, SECTION 2639, POLITICAL CODE—NONVIOLATION OF SECTION 11, ARTICLE I, CONSTITUTION.—Subdivision 12 of section 2639 of the Political Code does not violate section 11 of article I of the constitution; and the fact, should it be a fact, that there may be many or some of the counties which may never find occasion to apply the provisions of said subdivision to their own purposes does not render it any the less uniform in its operation, within the meaning or intent of said section 11 of article I of the constitution.

[11] ID.—SECTION 11, ARTICLE I, CONSTITUTION—MEANING OF.—What is meant by section 11 of article I of the constitution is that any law of a general nature shall not discriminate as between persons who or things which stand in the same relation to such law "in respect to the privileges and immunities conferred upon it or the acts which it prohibits."

---

7. See 7 Cal. Jur. 420, 424.

8. Construction of constitutional provisions relative to titles of statutes, notes, 1 Ann. Cas. 584; Ann. Cas. 1915A, 79. See, also, 25 R. C. L. 837.

11. See 5 Cal. Jur. 818; 6 R. C. L. 419.

[12] ID.—MEANING OF WORD "UNIFORM" IN SECTION 11, ARTICLE I, CONSTITUTION.—The word "uniform" in section 11 of article I of the constitution does not mean universal, and even where a general law applies to all of a class, the classification being a legally proper one, the requirement of uniformity is in such case satisfied if it applies to all of such class alike.

[13] ID.—SUBDIVISION 12, SECTION 2639, POLITICAL CODE AND COUNTY GOVERNMENT ACT—ABSENCE OF INCONGRUITY.—There is not any incongruity between subdivision 12 of section 2639 of the Political Code and those sections of the County Government Act defining the powers and duties of boards of supervisors with respect to the maintenance of roads and bridges "within their respective counties," nor with certain sections of the Political Code relating to the same subjects.

(1) 12 C. J., p. 857, sec. 356, p. 859, sec. 357, p. 861, sec. 357; 15 C. J., p. 389, sec. 1.   (2) 12 C. J., p. 857, sec. 356, p. 859, sec. 357, p. 861, sec. 357.   (3) 29 C. J., p. 583, sec. 309.   (4) 29 C. J., p. 583, sec. 309.   (5) 29 C. J. p. 405, sec. 53.   (6) 36 Cyc., p. 1002.   (7) 36 Cyc., p. 1002.   (8) 36 Cyc., pp. 992, 1020.   (9) 36 Cyc., p. 1042 (Anno.).   (10) 36 Cyc., p. 1002.   (11) 36 Cyc., p. 992.   (12) 36 Cyc., p. 992.   (13) 29 C. J., p. 583, sec. 308.

PROCEEDING in Mandamus to compel auditor of Yuba County to draw and issue warrant in payment of services rendered. Issues of fact referred to Superior Court of Yuba County.

The facts are stated in the opinion of the court.

T. H. Christiansen, W. H. Carlin and Arthur Coats for Petitioner.

Ray Manwell and McLaughlin & McLaughlin for Respondent.

HART, J.—The petitioner, a freeholder and taxpayer in and a resident of the county of Yuba, presents to this court this petition for a writ of mandate to compel the respondent, as auditor of said county, to draw and issue his warrant in favor of petitioner, on the treasurer of Yuba County, for the sum of seventy-five dollars as in payment for certain alleged services performed by petitioner for said county.

12.   See 5 Cal. Jur. 819.

The services for which petitioner by this proceeding is seeking to secure payment are alleged to have been performed by him under a contract with the county of Yuba arising under the authority alleged to be vested in said county by two certain ordinances, one adopted by the county of Yuba and the other by the county of Sutter, which ordinances are alleged to be authorized by subdivision 12 of section 2639 of the Political Code. Said subdivision of said section reads as follows:

"The board of supervisors of any county in the state may, by and through an ordinance duly passed, permit the use of any of its public highways connecting with any main public highway of an adjoining county by the board of supervisors or highway commissioners of such adjoining county, for the purpose of constructing and maintaining thereon a highway or boulevard serving the needs of residents of both counties; and the board of supervisors of any such adjoining county, if it accepts the provisions of the ordinance adopted by the board of supervisors of the county granting the use, shall have the power to construct and maintain any such highway or boulevard, or to construct or maintain such bridge or bridges on such highway or boulevard as it may deem necessary, or to macadamize, pave, curb or gutter such highway or boulevard in such manner as it may determine, and the cost or expense thereof shall be paid out of the general fund of the county treasury, or such other fund as the board of supervisors may designate, or which shall otherwise be provided, of the county to which the use is granted. The board of supervisors of any counties proceeding under the provisions of this act may acquire real property adjacent to such public highway in an adjoining county for county purposes, and may expend thereon such funds as said board of supervisors shall deem necessary for county purposes. The board of supervisors of any counties proceeding under the provisions of this act may by mutual consent, expressed through ordinances of the respective boards, retransfer the use, control, maintenance and jurisdiction of any highway or boulevard constructed under the provisions hereof to the county originally granting the use."

The facts as stated in the petition are as follows: That Bear River, a torrential stream, at all times in every year

carrying water, and having its source on the northerly slope of the Sierra Nevadas, flows in a general westerly direction down to a certain point in the county of Sutter, where it empties into the Feather River; that, until approximately twenty years ago, the filum or center thread of said river constituted and was the boundary line between the county of Yuba and "that portion of said county of Sutter lying and being easterly from said Feather river"; that during approximately all that time a public road or highway was maintained by the county of Yuba from the city of Marysville, the county seat of said county, down to said Bear River where it then formed said county line, and by the county of Sutter southerly therefrom down to the county of Sacramento; that a bridge across said river, forming a part of said public road or highway, was constructed, "and during said time was maintained jointly by the joint efforts and the joint expense of said counties." The petition proceeds:

"On or about twenty years prior to the date of the commencement of this action, the exact date whereof petitioner cannot state, said Bear River, due to large deposits of detritus, sand and other material in its channel carried there from the operation of hydraulic mines near the headwaters of said stream, changed its course and wandered from its original channel which formed said boundary line of said two counties, southerly and formed a new channel in said County of Sutter approximately one mile south of said former channel and said boundary line and which said new channel said river has ever since followed and now does follow excepting only that said new channel aforesaid did return to the old site of the old channel a comparatively short distance east of the easterly bank of said Feather River.

"That said change of channel by said Bear River ever since its change has interfered with and still does interfere with convenient and proper communication by and between the residents and inhabitants of said County of Yuba and said County of Sutter, and for that matter of all persons seeking to traverse the territory lying in said County of Sutter south of said old channel of said Bear River and rendering the joint bridge heretofore referred to as utterly useless.

"That for a period of more than one year prior and up to the date of the commencement of this action, there has existed and still does exist in said County of Sutter, a certain road or highway which is particularly described and referred to in the Resolution of the Board of Supervisors of the respective counties of Yuba and Sutter hereinafter in this petition set forth, which said highway crosses the said changed channel of said Bear River in Paragraph IV of this petition set forth and referred to, and which said highway not only extends in a southerly direction south from said changed channel of said Bear River down through said County of Sacramento and on into the City of Sacramento, but it also extends northerly from where it crosses said changed channel of said Bear River to the dividing line between said Counties of Yuba and Sutter and in its course northerly from said changed channel of said Bear River during all of said times said highway did and still does connect with a main public highway of said County of Yuba.

"That in order to cause said highway extending across said changed channel of said Bear River aforesaid to be and remain passable and of use to the traveling public, including the residents of said Counties of Yuba and Sutter, it is necessary that said highway be placed and maintained in good repair and that a good and sufficient bridge be constructed and maintained as a part of said highway across said changed channel of said Bear River."

On the fifth day of November, 1923, the board of supervisors of Sutter County, at a regular meeting thereof, passed and adopted an ordinance granting to the board of supervisors of the county of Yuba permission to use a certain described portion of said public highway in the said county of Sutter, connecting with a main public highway of the county of Yuba, for the purpose of constructing and maintaining thereon a highway or boulevard or both, "serving the needs of the residents of both the counties of Yuba and Sutter," upon the following conditions:

"(a) That all bridges that are constructed upon said highway be constructed jointly by said two counties in the manner prescribed by law for the construction of joint bridges across streams and rivers upon the boundary line between counties, and that the cost thereof be borne equally by said counties.

"(b) That notwithstanding anything in this ordinance contained, the Board of Supervisors of the County of Sutter may enter and do any work upon said highway for the maintenance or construction thereof, so long as such work does not interfere or conflict with any work then being done or contracted to be done by the Board of Supervisors of the said County of Yuba; and also, that the Board of Supervisors of the County of Sutter in case of mutual agreement with the said Board of Supervisors of the County of Yuba, may join with said Board of Supervisors of the County of Yuba, in the doing of any maintenance or construction work upon said highway."

The ordinance further provides that the permission therein and thereby granted is upon the express condition that the board of supervisors of the county of Yuba shall accept the provisions of said ordinance within a reasonable time, otherwise said ordinance shall cease to be effective, etc.

On the eleventh day of December, 1923, the board of supervisors of Yuba County, at a regular meeting of said board, duly passed and adopted a resolution embodying the above-mentioned ordinance passed and adopted by the board of supervisors of Sutter County and thereby accepted said ordinance, "and all and singular the terms, conditions and provisions thereof."

Proceeding thereafter to carry out the provisions of the said resolution of the board of supervisors of Yuba County, the said board, on the seventeenth day of December, 1923, having employed him for that purpose, authorized and directed the petitioner "to go upon and clear from brush and material deposited thereon a portion of said highway in said resolution described, and thereupon petitioner did proceed and did perform said work and labor in accordance with said order or resolution of said Board of Supervisors aforesaid, and did, in connection therewith, perform labor of the reasonable value of seventy dollars."

It is further alleged in the petition that the petitioner regularly and according to law presented his claim for said work to the board of supervisors and that the same was subsequently duly approved and allowed by said board, but that, on his presentation of said claim to the respondent, as auditor of the county of Yuba, on the eighth day of January, 1924, accompanied by a demand that said re-

spondent, as such auditor, draw his warrant for the amount thereof on the treasurer of said county in favor of petitioner, said respondent, as such, refused, has at all times refused and "still does refuse to draw his warrant for said claim upon said Treasurer in favor of petitioner" for said sum of seventy dollars.

The respondent has filed herein a motion to strike from the petition certain specified portions of its averments, a demurrer to the petition on the general and certain special grounds and an answer denying certain of the allegations of the petition.

By the answer certain material issues of fact are tendered, but the parties at the hearing of the arguments herein stipulated that the questions of law might first be determined and, if in favor of the petitioner, then the issues of fact should be referred to the superior court of Yuba County for trial and determination.

The petition contains no averment of fact which is not essential to a statement of a case for the relief herein demanded. And the facts therein stated are well pleaded, if the law under which the proceedings had by the respective boards of supervisors of Yuba and Sutter Counties involves a valid legislative enactment. This is the important question raised by the motion to strike. The same question is presented by the demurrer to the petition.

The respondent contends that section 2639 of the Political Code, in so far as is concerned subdivision 12 thereof, is unconstitutional, in that it is in conflict with so much of section 24 of article IV of the constitution as reads as follows: "Every act shall embrace but one subject, which subject shall be expressed in its title."

It is further likewise contended that subdivision 12 of section 2639 is void because it is violative of article I, section 11, and article XI, section 4, of the constitution. The first-named section provides: "All laws of a general nature shall have a uniform operation." The last-named section reads as follows: "The legislature shall establish a system of county governments, which shall be uniform throughout the state; and by general laws shall provide for township organizations, under which any county may organize whenever a majority of the qualified electors of such county, voting at a general election, shall so determine; and whenever a county

shall adopt township organization, the assessment and collection of the revenue shall be made, and the business of such county and the local affairs of the several townships therein shall be managed and transacted, in the manner prescribed by such general laws.''

[1] Before proceeding to the consideration of the specific points urged by the respondent involving a challenge of the constitutional validity of subdivision 12 of section 2639 of the Political Code, it is deemed proper to have before us the legal status of county government organizations and their legal relation to the state government, and, as to this, these propositions may be set down as fundamental or at least so thoroughly established as to be entirely removed from the field of speculation or the realms of legitimate disputation: 1. That counties, as political entities or subdivisions of the state, are governmental agencies, all the powers and functions of which ''have a *direct* and *exclusive* reference to the general policy of the state, and are, in fact, but a branch of the general administration of that policy.'' (1 Dillon on Municipal Corporations, 5th ed., sec. 35; *County of Sacramento* v. *Chambers,* 33 Cal. App. 142, 146 [164 Pac. 613]; *County of San Mateo* v. *Coburn,* 130 Cal. 636 [63 Pac. 78]; *Reclamation Dist. No. 1500* v. *Superior Court,* 171 Cal. 672, 679 [154 Pac. 845]; *Dillwood* v. *Reicks,* 42 Cal. App. 602, 607 [184 Pac. 35].) [2] 2. That, as a corollary of the foregoing proposition, ''the state may, through its legislature, and in the exercise of its sovereign power and will, in all cases where the people themselves have not restricted or qualified such exercise of that power, apportion and delegate to the counties any of the functions which belong to it,'' and, ''on the other hand, the state may take back and itself resume the exercise of certain functions which it had delegated to those local agencies.'' (*County of Sacramento* v. *Chambers,* 33 Cal. App. 149 [164 Pac. 613].)

We know of no reason, constitutional or otherwise, why the state and the counties may not act jointly in carrying out certain of the policies of the former. There are several instances in which this has been done and is now being done. Formerly the counties were required to assess all taxable property within their respective territorial limits for state purposes and to collect and pay the same into the treasury of the state. At the present time, the state and the counties

have the joint control, support and care of indigent persons afflicted with tuberculosis, who are without relatives from whom they may legally require support and care. (Stats. 1915, p. 1530; *County of Sacramento* v. *Chambers, supra; Matter of Controversy Between City and County of San Francisco and County of Alameda, on the One Part, and Thomas F. Boyle, Auditor of the City and County of San Francisco, on the Other Part,* 191 Cal. 172 [215 Pac. 549].) There are, of course, many matters or subjects of governmental concern of which the state itself must maintain the power of sole and exclusive administration, and which, by the mandatory terms of the constitution, cannot, and, indeed, by the very nature and logic of the situation, should not be transferred or delegated to the governmental cognizance of any of its political subdivisions; but as to all of that great variety of matters or subjects which may be committed to the governmental jurisdiction of counties, the state, in its discretion, may delegate the same to counties, or, having already delegated them to counties, withdraw them from their further cognizance.

[3] There is nothing in the constitution which would prevent the state itself from taking over the exclusive control of the matter of the construction and maintenance of all public highways in the state, whether they be trunk or main highways or so-called county roads. The power and corresponding right to do so have always resided in the state through its legislature. But to leave free from all possible doubt the right of the state to control the construction of main or trunk highways therein, the people in the year 1902, added to article IV of the constitution, section 36, which reads as follows: "The legislature shall have power to establish a system of state highways or to declare *any* road a state highway, and to pass all laws necessary or proper to construct and maintain the same, and to extend aid. for the construction and maintenance in whole or in part of any county highway."

Under that section the legislature is empowered, through the appropriate branch of its administrative machinery, to declare any county road a state highway, and thus take sole supervisory control over it. No exception is made as to the character of the county road which the state may translate into a state highway; it may be a road connecting with

a main line road through the state or it may be a lateral
leading to some point on a trunk road to another point in
the county. [4] The state is itself 'the sole judge of
whether a certain county road should be made a state high-
way or a part of the state highway system and its conclu-
sion as to that matter could not be successfully challenged.

[5] Nor is there any provision of the constitution which
prohibits the legislature from authorizing two or more coun-
ties, contiguously situated to each other, to jointly build
and maintain highways through their respective coun-
ties, or, indeed, from authorizing one county to extend, when
public convenience demanded it, and at its own expense, any
of its own county roads into and over certain limited por-
tions of an adjoining county and thus connect with a road
in the latter county. Obviously, such authority, as a matter
of fairness, should be conferred and made exercisable, as
the statute in question provides, only upon the condition
that the county into which such road is to be extended con-
sents to such extension and upon such terms as shall be fair
and just, according to the judgment of the legislature.
There is to be found in section 4 of article XI of the con-
stitution hereinabove reproduced, no implied, much less an
express, inhibition against legislation authorizing such an
arrangement between two counties. [6] That section is, of
course, mandatory in its terms and the legislature is thereby
imperatively required to establish, as an essential part of
the machinery of the state government and as in aid of the
administration thereof, a system of county governments,
which shall be uniform throughout the state, which last
clause means "an organized plan or scheme in keeping with
which the constituent parts thereof are rendered similar
and are connected and combined into one complete, har-
monious whole, and it necessarily imports both a unity of
purpose and entirety of operation." (*Coulter* v. *Pool*, 187
Cal. 181, 192 [201 Pac. 120]; *Board* v. *State*, 26 Okl. 366
[109 Pac. 563]; *State* v. *Riordan*, 24 Wis. 484.) This is all
that is required of the legislature by that section of the con-
stitution in the organization of county governments, but, of
course, from the uniformity thus required no departure is
permitted except in such cases only as such departure
is specifically authorized by the constitution itself. (*Coul-
ter* v. *Pool*, *supra*.) [7] There is nothing in said sec-

tion which limits or restricts the legislature in the matter of committing to counties the power to administer such of its own functions and policies as it has the right to delegate or which it is not forbidden so to delegate by some other mandate of the organic law. In other words, said section of the constitution does not pretend to designate or specify the *quantum* of the governmental powers of the state which shall be delegated to counties, nor does it point out or purport to declare what particular functions or policies included within the sovereign powers of the state government shall be conferred upon counties. All this is left to the sole discretion and judgment of the state, acting through its lawmaking department, except in so far as the legislature may be required by other provisions of the constitution, mandatory in their terms, to invest counties with certain specific powers which otherwise would belong to the sovereignty of the state subject to be conferred upon or withheld from the counties by the legislature.

It is not necessary to present herein illustrations of the many conceivable instances in which the scheme authorized by subdivision 12 of section 2639 of the Political Code would not only be of immeasurable benefit to the county desiring to extend one of its roads into an adjoining county so as to connect with a road in the latter county but would be necessary in order to secure that convenient connection with other parts of the state so essential to the full development and maintenance of prosperous business conditions. A road in a particular county with its terminus at a distance of several miles from a line dividing such county from another may serve in full measure all the purposes of the county in which it is situated, and, therefore, there might not exist in such case any reason or motive or desire in the latter county to extend the road to the county line so that it would connect with a road in the adjoining county. What good reason may be suggested why the legislature should not authorize the one county, with the consent of the other, to extend, at its own expense, one of its roads so as to connect with the road in the adjoining county at the terminus of the latter's road? But, as stated, it is needless to introduce further illustration of the fairness, reasonableness and the efficacy of such a plan as is contemplated by subdivision 12 of section 2639 of the Political Code. It is suffi-

cient to know that the legislature has the power to establish such a scheme, that it has done so and that it appears to involve a reasonable exercise of such power.

We now approach the consideration of the specific points upon which respondent contends this court must rest the conclusion that subdivision 12 of the section under consideration is in conflict with the terms of section 24 of article IV of the constitution and of section 11 of article I of the constitution. The contention that said subdivision is in conflict with section 4 of article XI of the constitution has already been sufficiently considered. **[8]** The provisions of the constitution with which it is claimed the act in question is in conflict are mandatory and must be followed with substantial strictness. (Sec. 22, art. I, Const.; *Ex parte Liddell,* 93 Cal. 633 [29 Pac. 251]; *Law* v. *San Francisco et al.,* 144 Cal. 384 [77 Pac. 1014].) Both sections, however, have often been considered and their meaning and scope construed by the supreme and appellate courts of this state. Their meaning and scope have thus been made perfectly clear, and the only difficulty, if difficulty there be, which can present itself in any case where it is charged that the legislature, in the enactment of some statute, has failed to observe the mandates thereof, is in determining whether the charge may or may not be sustained. There is perhaps no other case, among the many, where the question of the validity of a statute was made determinable by the test prescribed by section 24 of article IV of the constitution, in which the purpose, the meaning and the scope of said section were expounded in language of greater perspicacity than in that of *Ex parte Liddell, supra.* In that case the title of the act assailed read: "An act to establish a state reform school for juvenile offenders, and to make an appropriation therefor." The act provided, among other things, that any boy or girl between the ages of ten and sixteen years, who has been convicted of an offense, the penalty for which was imprisonment in the county jail or the state penitentiary, may be committed to the state reform school for a term of not less than one nor more than five years; "provided, however, that if the crime be one punishable by imprisonment in the county jail, the court may, in its discretion, commit the offender to the county jail for the time authorized by law," in such a case. The claim was, as is

in reality the same here, that the act embraced more than one subject, but that the title of the act failed fully to express its subject matter. The court held that the title of said act was not subject to the criticism thus made against it, and gave the following construction of section 24 of article IV:

"The object of the provision is to prevent legislative abuse,—to prevent the passage of acts bearing deceitful and misleading titles. It is intended to protect the members of the legislature, as well as the public, against fraud; to guard against the passage of bills the titles of which give no intimation to the members of the legislature or to the people of the matters contained therein. (Cooley's Constitutional Limitations, 6th ed., 169.) . . .

"In *Abeel* v. *Clark*, 84 Cal. 229 [24 Pac. 383], we held it was not necessary that the title of the act should embrace an abstract of its contents. The cases cited therein show that such is the view taken by the courts of other states; and on reflection, it must appear that this conclusion is based upon the soundest principles of constitutional construction. It certainly was not intended that the title should be a repetition of the provisions found in the body of the bill; the object was to *prevent deception by the inclusion of matters incongruous with the subject specified in the title.* If the title contains a reasonable intimation of the matters under legislative consideration, the public cannot complain. It has always been the custom to state the subject of a bill in general terms and with the fewest words, and the framers of the constitution doubtless intended the legislature to conform to that custom. (*Mills* v. *Carleton*, 29 Wis. 409; *Bright* v. *McCullough*, 27 Ind. 226; *People* v. *Mahaney*, 13 Mich. 494.) . . . So an act to incorporate a fireman's benevolent association may include provisions for levying a tax upon the income of a foreign insurance company for the benefit of the corporation (*Fireman's Benevolent Assn.* v. *Lounsbury*, 21 Ill. 511 [74 Am. Dec. 115]); and it is held in many cases that an act entitled in general terms an act to incorporate a certain town may lawfully provide all means necessary for the government of the town, including taxation, courts, definition of misdemeanors, punishment of offenders, municipal improvements, etc. (*State* v. *Town*

*of Union,* 33 N. J. L. 350; Cooley's Constitutional Limitations, 172, note 1.)''

In the case of *Law* v. *San Francisco, supra,* the supreme court quoted approvingly the following cogently expressed views of a constitutional provision of another state precisely the same as section 24 of article IV of our constitution by the United States circuit court in *Geer* v. *Commissioners of Ouray County,* 97 Fed. 435 [38 C. C. A. 250]: ''The object of this constitutional provision was twofold; it was to prevent surreptitious legislation, the insertion of enactments in bills that were not indicated by their titles, and to forbid a treatment of incongruous subjects in the same act. It was never intended to prevent the legislature from treating all the various branches of the same general subject in one law, or from inserting in a single act all the legislation *germane* to its general subject.''

Many other cases to the same effect as the above might be cited, but it is not necessary to do so here.

[9] Tested by the principles enunciated in the cases referred to above, it cannot justly be said that the act in question involves legislation upon any subject not indicated by its title or the ''treatment of incongruous subjects.'' It is clear that there is no subject treated in the act which is not germane to its general subject, to wit: ''The powers and duties of boards of supervisors over the roads and highways of the county.'' Every provision in the act—every subject thereof—relates solely to county roads or highways and the powers which may be exercised over them by the boards of supervisors in the several counties throughout the state. It follows, therefore, that there is nothing deceptive in the title, or, in other words, there is no subject treated in the act which is not reasonably and fairly indicated by the title thereof.

But it is argued that the title, to the average mind, would indicate that the phrase, ''roads and highways of the county,'' has reference to roads and highways wholly situated and maintained within the territorial limits of each of the counties of the state. The title does not expressly so declare, nor, in view of the constitutional provision expressly authorizing the state, through the board or body to which it has committed such duties to establish a system of ''*state* highways,'' may it reasonably be held that it so im-

plies. If the title had thus been made to declare: " . . . relating to the powers and duties of boards of supervisors over the roads and highways *in* (or within) the counties," the argument might then have some foundation for its support. We are authorized to assume, from the phraseology of the title and the provisions of subdivision 12 of section 2639 of the Political Code, between which there appears perfect agreement, that the words "roads and highways *of* the county" were designedly employed so as to make it clear that the powers of the boards of supervisors were to be limited in their application to *county* roads and highways as distinguished from *state* roads and highways over which the state has sole and exclusive jurisdiction. Moreover, it being true, as has herein been shown, that the legislature may rightfully establish such a scheme or plan as is provided for by said subdivision 12, and the state having done so, that portion of the road in a county constituting the extension by the adjoining county, such extension having been effected in conformity with the requirements of said subdivision, would, in law, be a road "or highway *of* the county" making the extension, although such portion of said road is not physically located in such county.

[10] Subdivision 12 of section 2639 of the Political Code does not offend section 11 of article I of the constitution. Said subdivision applies without discrimination in any respect to each and every county of the state. Any county, when the public convenience or the exigencies of the situation may justify or demand it, may invoke and act upon the provision of said subdivision. The fact, should it be a fact, that there may be many or some of the counties which may never find occasion to apply the provisions of said subdivision to their own purposes does not render it any the less uniform in its operation, within the meaning or intent of section 11 of article I of the constitution. [11] What is meant by that mandate of the constitution is that any law of a general nature shall not discriminate as between persons who or things which stand in the same relation to such law "in respect to the privileges and immunities conferred upon it or the acts which it prohibits." [12] The word "uniform" in the section does not mean universal, and even where a general law applies to all of a class, the classification being a legally proper one, the requirement of uni-

formity is in such case satisfied if it applies to all of such class alike. (5 Cal. Jur. 818, 819; *Smith* v. *District Court,* 17 Cal. 548, 555; *Ex parte Smith and Keating,* 38 Cal. 702; *Selowsky* v. *Superior Court, etc.,* 180 Cal. 404 [181 Pac. 652], and the numerous other cases cited in 5 Cal. Jur., p. 818 et seq.)

It is clear that, as to "uniformity of operation," subdivision 12 of section 2639 fully squares with the requirement of section 11 of article I of the constitution, as that mandate of our organic law has been uniformly construed by the cases.

[13] There is not, as counsel for the respondent claim is true, any incongruity between said subdivision 12 and those sections of the county government act defining the powers and duties of boards of supervisors with respect to the maintenance of roads and bridges "within their respective counties," nor with certain sections of the Political Code relating to the same subjects. Subdivision 12 of section 2639 merely invests such boards with more extensive powers with respect to the construction and maintenance of county roads and highways than they possessed prior to the passage of the act in question.

It follows from the foregoing views that the motion to strike from the petition certain averments must be denied and the demurrer to the petition overruled, and such is the order. As stated at the outset of this opinion, however, the facts as stated in the petition are controverted by the answer, and by the stipulation of the parties those questions of fact are to be submitted to the determination of the superior court of Yuba County, until which determination and the report of the court of its findings no conclusion upon the question whether the writ shall or shall not issue from this court can be announced.

Accordingly, it is ordered that the issues of fact raised by the answer to the petition herein be referred to the superior court of the state of California, in and for the county of Yuba, for trial, and said court is hereby directed to hear and determine the same, and to report and return to this court its findings thereon within sixty days after the date of the filing of this opinion.

Plummer, J., and Finch, P. J., concurred.