[S. F. No. 6074.    Department Two—October 2, 1914.]

CHARLES JOSSELYN, Plaintiff, Respondent, and Appellant, v. CITY AND COUNTY OF SAN FRANCISCO, Defendant, Appellant, and Respondent.

TAXATION—SAN FRANCISCO—SUSPENSION OF DOLLAR LIMIT—QUESTION OF NECESSITY ONE OF FACT.—The question of the necessity for the suspension of the "dollar limit" of taxation, as fixed by section 11, chapter I, article III of the charter of the city and county of San Francisco, is one of fact, and the determination by the supervisors of the existence of such necessity is not final.

ID.—ACTION TO RECOVER EXCESS TAXES—FINDING AGAINST EXISTENCE OF EMERGENCY—APPEAL—EVIDENCE—ABSENCE OF BILL OF EXCEPTIONS.—In an action to recover taxes levied in the city and county of San Francisco in excess of the "dollar limit," a finding that no such great emergency as that contemplated by the charter justified the suspension of the "dollar limit," must be assumed on appeal, in the absence of a bill of exceptions, as supported by the evidence.

ID.—PUBLIC UTILITIES—NECESSITY FOR ACQUISITION—DEFEAT OF BONDS AT SPECIAL ELECTION—PROCEEDINGS BECOME FUNCTUS OFFICIO.—

The determination of the board of supervisors of the city and county of San Francisco, acting in pursuance of the powers conferred upon them by article XII of the charter, that public necessity demanded the acquisition and construction as a public utility of a particular street railway, to be paid for by the proceeds of a bond issue, and the subsequent proceedings had in that connection, terminated and became *functus officio* with the special election called to authorize the issuance of the bonds, at which the proposition was defeated by a vote of the people.

ID.—PROCEEDINGS TO RAISE MONEY TO CONSTRUCT STREET RAILWAY ARE MANDATORY—INVALID TAX LEVY.—In order that money might thereafter be raised for such purpose, either by taxation or bond issue, it was necessary that the supervisors should proceed anew under the provisions of article XII of the charter. These provisions are mandatory and the failure to comply with them made void a subsequent attempted levy of a tax for the construction of such street railway.

ID.—VOID LEVY OF EXCESS TAXES FOR SPECIFIED PURPOSES—VOID ORDINANCE DETERMINING NECESSITY—INVALIDITY OF TAX—ADDING AMOUNT OF SPECIAL TO GENERAL LEVY.—Where an ordinance of the city and county of San Francsico, purporting to determine the existence of "a great public necessity and emergency" for two specified purposes, is void because no such necessity or emergency exists, the special levy founded thereon of additional taxes for such purposes, in excess of the "dollar limit," falls with it, and the taxes levied therefor are void. The special levy for one of such purposes cannot be upheld on the ground that the amount thereof, added to the amount of the general levy, after the exclusion therefrom of an illegal item, would not exceed in the aggregate the dollar limit.

ID.—TAXES FOR COUNTY PURPOSES—DOLLAR LIMIT APPLICABLE TO.— The limitation prescribed by section 11 of chapter I of article III of the charter of the city and county of San Francisco on the rate of tax levy applies to taxes imposed purely for county purposes as well as to those for city purposes.

APPEALS from a judgment of the Superior Court of the City and County of San Francisco. J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Drown, Leicester & Drown, for Plaintiff and Appellant.

Percy V. Long, City Attorney, and Jesse H. Steinhart, Assistant City Attorney, for Defendant and Appellant.

MELVIN, J.—Plaintiff brought this action to recover certain taxes paid by him under protest in the city and county

of San Francisco. The case comes here on complaint, answer, findings of fact, and judgment. Three separate items of taxation were involved. The court found in plaintiff's favor on two of these and against him on the third. Each party to the litigation appeals, plaintiff from that portion of the judgment which is adverse to him and defendant from the whole of it. The facts as determined from the findings are, in brief, as follows:

Between the first Monday in May and the first Monday in June, 1907, the board of supervisors of the city and county of San Francisco met to prepare a budget for the fiscal year 1907–8. One of the items of this budget was an additional and special tax levy of twenty cents on each one hundred dollars assessed valuation to raise seven hundred and twenty thousand dollars for the construction of a municipal railroad on Geary Street. On June 3, 1907, the budget came up for final passage, but in the mean time, it had been amended so that the tax for the construction of the Geary Street road was not named as a "special and additional" tax, but as a part of the general levy and an item for the repair, sprinkling, and sweeping of streets was added. This was "to be paid for out of an additional and special tax levy of 20 cents on each $100 assessed valuation," the amount being seven hundred and twenty thousand dollars. Prior to May 27, 1907, before the budget passed to print a time was fixed by the supervisors for hearing taxpayers and citizens in regard to it and the board attended at the time so set. After the adoption of the amendments no time was fixed for the hearing of taxpayers with reference to the budget or the amendments, but on June 10, 1907, at a meeting of the board, the privilege of the floor was granted and accepted by certain citizens and taxpayers who discussed the budget. At that date the three items involved in this case were set forth in the budget as follows:

"Geary Street Railroad—For the construction of a
    municipal street railway from Market Street,
    along Geary Street to Point Lobos Avenue,
    along Point Lobos Avenue to Tenth Avenue;
    thence along Tenth Avenue to Fulton Street. .$720,000."

"For the repair, sprinkling and sweeping of streets,
    to be performed by the board of works, under

the direction of the board of supervisors, to be paid for out of an additional and special emergency tax levy of 20 cents on each $100 assessed valuation.........................$720,000.''

''For increase in salaries of teachers in primary and grammar schools, to be paid out of the additional and special tax levy of 20 cents on each $100 assessed valuation................$100,000.''

Exclusive of the last two items and of the amounts not contemplated in that part of the charter which imposes the restriction commonly designated the "dollar limit," the budget required a levy of one dollar on each one hundred dollars of assessed valuation for city and county purposes.

On June 21, 1907, Eugene E. Schmitz, who on June 10th had received as mayor of the city and county the budget as passed, returned it with his veto on the items for the Geary Street road and the sprinkling, repair, etc., of the streets. On June 17th the board of supervisors, acting under the proper charter provision and declaring that because of his incarceration, the mayor was unable to perform his official duties, chose one James L. Gallagher as president *pro tempore.* On June 24th the board by a vote of seventeen supervisors, being all of those present (Supervisor Rea being absent) formally overruled the veto. On July 1, 1907, the supervisors again adopted the budget over this veto, seventeen members of the board voting in the affirmative and Supervisor Furey being absent.

On July 2, 1907, the budget was signed by the acting mayor and the clerk of the board of supervisors.

On June 24, 1907, the board had passed an ordinance, No. 233 (N. S.), superseding the "dollar limit" provided in section 11, chapter I, article III of the charter. The first section of the said ordinance was in part as follows:

"It is hereby recited, determined and declared that the repair, sprinkling and sweeping of streets, to be performed by the board of public works under the direction of the board of supervisors, and the proposition to increase the salaries of teachers in the primary and grammar schools of the city and county, as specified in the budget of the fiscal year 1907–8, constitutes and is a great necessity and emergency of the kind and character contemplated by the provisions of section 13, chapter I, article III of the charter." In the

second section of the ordinance the board determined and declared that the cost of the aforesaid propositions could not be paid out of the city's ordinary annual income. The superior court found in accordance with admitted facts that the Geary Street road was a public utility, that in 1903 the supervisors voted that such a utility was a matter of public necessity and following the charter provisions (chapter 12, section 4) they determined that the cost of the utility so far exceeded the annual revenues of the city and county in addition to the other necessary expenses thereof as to render it necessary to incur a municipal bonded indebtedness therefor; that a special election was held and the proposal to issue bonds was defeated; and that no further steps toward the construction of the Geary Street road were taken up to the time of the passage of the budget and the levy of the tax which we are here considering.

The court below determined that the suspension of the "dollar limit" was improper because neither in substance nor by proper allegation were the items described as necessities and emergencies really such. It was also adjudged that the appropriation for the Geary Street road was without authorization of law. But as the amounts sought to be improperly collected for the Geary Street road and the increase of teacher's salaries, when eliminated from the tax levy would have brought the tax to the "dollar limit," the plaintiff was allowed no relief from the tax for repairing, sweeping, and sprinkling streets. The exact language of the trial court's conclusion on this point is as follows:

"That the said levy of taxes so made by said board of supervisors for said fiscal year for the purpose of repairing, sprinkling and sweeping streets, as hereinbefore found, purports on its face to have been made in excess of the said limitation prescribed by section 11 of chapter I of article III of the said charter, and in and by the terms of said levy purports to be a levy authorized by the aforesaid invalid Ordinance number 233 (New Series); but that by reason of the invalidity of the said appropriation and levy for the construction of the said Geary Street Railroad, the said tax for the repair, sprinkling and sweeping of streets does not exceed the said last mentioned limitation; and that therefore the plaintiff is not entitled to recover any of the said taxes levied

for said fiscal year upon his said properties for the repair, sprinkling and sweeping of streets.''

Plaintiff's first attack is directed at the entire levy, his contentions being that the taxes were all illegal because

(1) At the time they were levied no appropriations or budget had been made;

(2) Neither the budget nor the levy was made within the time prescribed by the charter;

(3) The appropriation for the so-called emergency matters preceded the declaration that a necessity for them existed. We need not consider these interesting questions, however, as we agree with plaintiff's contention that the court erred in refusing to decree the refunding of that proportion of the tax levied illegally for payment of the expenses of repairing, sprinkling, and sweeping streets, while we are in accord with the conclusion that the purported levies for the construction of the Geary Street road and the increase in the salaries of teachers were void.

In the very recent case of *San Christina Investment Co.* v. *City and County of San Francisco,* 167 Cal. 762, [141 Pac. 384], we held that the question of the necessity for the suspension of the ''dollar limit'' is one of fact and that the determination by the supervisors of the existence of such necessity is not final. Here the court found that no such great emergency as that contemplated by the charter justified the suspension of the ''dollar limit.'' We must assume that such finding is amply supported by evidence as there is no bill of exceptions. It follows that under the authority of the case cited above, we must sustain the conclusion of law that Ordinance No. 233 (N. S.), declaring the existence of such great emergency was void.

Before discussing further the court's conclusion that the elimination of the item for the Geary Street road made it possible for the city to collect that tax for the sweeping, sprinkling, and care of the streets levied avowedly as an emergency tax, we will briefly examine the reasons which must have governed the court in holding the former levy void. The powers of the board of supervisors relating to public utilities are conferred by and subject to the provisions of article XII of the charter. By section 1 of that article the board, after determining that public interest or neces-

sity demands the acquisition of a public utility, "*must* procure from the board of works" plans and estimates of the cost, etc., of such public utility. By section 5 the procedure of the board is prescribed. This includes the passage of an ordinance specifically declaring the board's finding that public interest or necessity demands the acquisition, construction, or completion of the utility; a direction in the same ordinance to the board of public works to procure and file plans and estimates of the cost; the publication of this ordinance for at least two weeks; negotiations and contracts for the work if the cost can be paid out of the city's annual revenues; and if the cost so far exceeds the annual revenues of the city in addition to the other proper expenses thereof as to render necessary a bonded indebtedness, then the calling of a special election. None of these things had been done. We cannot say that the proceedings taken in 1903 could be utilized by a board acting in 1907, because the determination by the board at the earlier date that public necessity demanded the acquisition and construction of the Geary Street road had been reversed by the people themselves. Those proceedings terminated with the election and the whole matter thereupon became *functus officio*. In order that money might thereafter be raised either by taxation or bond issue it was necessary that the supervisors should proceed anew under the provisions of article XII of the charter. These provisions are mandatory and the failure to comply with them made void the attempted levy of the tax for the Geary Streeet road.

Reverting to the conclusion of law that the striking from the levy of the item of seven hundred and twenty thousand dollars for the public utility restored the item for construction, repair and upkeep of the streets, we are confronted with the fact that the same ordinance deals with the levies for the streets and for the increase of teachers' salaries. In the ordinance they are co-ordinately mentioned and collectively referred to as "a great necessity *and* emergency." While it may be very convenient bookkeeping to substitute for the sum specified in the Geary Street railroad item the exactly similar amount involved in the item for expenditures on the streets, we can see no logic in preferring one part of the void ordinance to the other. When the items of seven hundred

and twenty thousand dollars for the repair, sprinkling, and sweeping of the streets and of one hundred thousand dollars for the increase in salaries of teachers were inserted in the budget and were by the very terms thereof made payable out of the proceeds of a tax to be levied in excess of the limitation prescribed by section 11, chapter I, of article III of the charter, the supervisors showed their intention that the money should be raised by a *special* tax. The ordinance by which this result was sought to be attained was invalid and we may not validate one of its parts merely because, by so doing we would authorize the taxation of property to the full extent permitted by the charter. Proceedings for taxation are *in invitum,* and where, as here, the only levy sought to be made for these two specified purposes was the "additional tax levy authorized by Ordinance No. 233," the court may not properly add the amount of the special levy to the general levy. Ordinance No. 233 being void, the levy founded thereon falls with it. The levy being void there was no valid tax.

Counsel for defendant say that the levying of a large part of the taxes here involved was for purely *county* purposes as distinguished from city purposes and that the limitation prescribed by section 11 of chapter I of article III of the charter does not apply to taxes imposed for county purposes. The very language of the limitation contradicts this theory. It is as follows: "But such levy, exclusive of the state tax and the tax to pay the interest and maintain the sinking funds of the bonded indebtedness of the city and county, and exclusive of the tax to pay for the maintenance and improvement of the parks, squares, and public grounds of the city and county, shall not exceed the rate of one dollar on each one hundred dollars' valuation." Taxes for county purposes are not excepted by the language quoted above, while the state tax and certain others are excepted. If it had been the intention of the framers of the charter that the limitation should not apply to taxes for *county* purposes, that intention would have been expressed and the exception would have been inserted with the others which do appear.

That part of the judgment from which plaintiff appeals is reversed with instructions to the trial court to amend its conclusions of law in accordance with the views here ex-

pressed and to enter judgment for the amount prayed for in the complaint.

Henshaw, J., and Lorigan, J., concurred.

Hearing in Bank denied.