[S. F. No. 8954. In Bank.—July 28, 1920.]

UNION TANK LINE COMPANY (a Corporation), Respondent, v. FRIEND W. RICHARDSON, as Treasurer, etc., Appellant.

[1] TAXATION — CAR-LOANING COMPANIES OPERATING UPON RAILROADS IN THIS STATE—CONSTRUCTION OF CONSTITUTION.—The portion of the first paragraph of section 14 of article XIII of the constitution which provides for the levy, assessment, and collection of taxes upon railroads, including refrigerator, oil, stock, fruit, and other car-loaning and other car companies operating upon railroads in this state, authorizes the taxation in the manner prescribed in the constitution of all car-loaning companies which are carrying on their business upon railroads in this state.

[2] ID.—LEASING OF OIL TANK-CARS BY FOREIGN CORPORATION—USE UPON RAILROADS IN THIS STATE — LIABILITY TO TAXATION.—A foreign corporation having its principal place of business in another state and engaged in the acquiring by purchase or otherwise of oil tank-cars and the leasing thereof to shippers throughout the United States is a car-loaning company operating upon railroads in this state within the meaning of the first paragraph of section 14 of article XIII of the constitution, and therefore within the scope of its taxing provisions, where it caused certain of its oil cars to come into this state and to be hauled over and upon the railroads of this state, notwithstanding the cars were operated by the lessees under a contract made outside of the state and by its terms all control over the cars was relinquished to the lessee.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. George E. Crothers, Judge. Reversed.

The facts are stated in the opinion of the court.

U. S. Webb, Attorney-General, and Frank L. Guerena, Deputy Attorney-General, for Appellant.

Morrison, Dunne & Brobeck and Herbert W. Clark for Respondent.

LAWLOR, J.—This is an appeal from a judgment in favor of the plaintiff, the Union Tank Line Company, a corporation, in an action brought to recover from the defendant, Friend W. Richardson, as treasurer of the state of California, taxes paid under protest.

There is no dispute as to the facts. The plaintiff is a New Jersey corporation, having its principal place of business in the state of New York. It was doing and was qualified to do business in this state, where it had a managing agent. The company was engaged in the acquiring by purchase or otherwise of oil tank-cars and the leasing thereof to shippers throughout the United States. All contracts between the plaintiff and shippers were entered into and executed in New York at the plaintiff's office, where, it appears, all payments under such contracts were made to the company. Plaintiff maintained and operated repair-shops for the repair of its cars in the city of Richmond, county of Contra Costa, and in the town of El Segundo, Los Angeles County. At some time prior to March 1, 1913, plaintiff entered into a contract with the Standard Oil Company of California by which the former undertook to lease to the latter, for its use and service in the transportation of petroleum oil and other oil products within and outside of the state, such cars as might be required. In this agreement it was provided that the Oil Company should repair plaintiff's cars at prices which should be mutually agreed upon from time to time; that the Oil Company should furnish the labor and should use materials specified by the plaintiff; that all materials should be inspected by the plaintiff's agents; that the tracks of the Oil Company at Richmond and El Segundo should be considered "home tracks" for any part of the plaintiff's equipment, and that the plaintiff should have free and reasonable use of those tracks; that the Oil Company should "perform, or assume the expense of, all switching

within or about its plant where such switching is occasioned by the natural operation of the plant or by instructions of the Car Company''; ''that the time any car shall be considered to be in the possession of the Oil Company shall be from the day the car is placed until it is unloaded, both inclusive, and that any car prior to the time of its being placed, or ordered placed for loading, by the Oil Company, and after the time it is unloaded shall be subject'' to the plaintiff's orders and not to those of the Oil Company, ''except that the Oil Company shall carry out the instructions of the Car Company with respect to the distribution of its empty cars''; and that plaintiff's cars should not be sublet without the plaintiff's consent. This contract was the only contract of lease into which the plaintiff entered with any person or corporation in California, and none of plaintiff's cars other than those furnished to the Oil Company was operated over rail lines in this state. It is admitted that although the plaintiff, as already shown, reserved the right to direct the movements of its cars after unloading, that right was not exercised during the period in question. The rail carriers in the state which hauled plaintiff's cars paid to the plaintiff three-fourths of one cent per mile per car, while the Oil Company paid a rental to the plaintiff and regular freight rates to the carriers. Plaintiff owns no railroad or rolling stock in this state other than the cars leased to the Oil Company. Plaintiff's vice-president and treasurer testified that the provision in the contract above referred to regarding the use of the Oil Company's ''home tracks'' was for the purpose of avoiding demurrage charges; that plaintiff did not allocate particular cars for the use of the Oil Company, and that, to his knowledge, no cars had been sublet by the Oil Company either with or without the plaintiff's consent.

In 1916 the state board of equalization assessed and levied against the plaintiff the tax authorized by subdivision (a) of section 14 of article XIII of the constitution. In accordance with that constitutional provision, the tax was measured by the gross receipts from the operations of the company within the state. The tax was paid to the defendant under protest, and thereafter this action was commenced to recover the amount thus paid. The court made findings

of fact and conclusions of law and gave judgment for plaintiff in the sum of $4,712.54, the amount prayed for.

In the first paragraph of section 14 of article XIII of the constitution it is provided that "Taxes levied, assessed and collected . . . upon railroads, including . . . refrigerator, oil, stock, fruit, and *other car-loaning and other car companies operating upon railroads,* in this state . . . shall be levied, assessed and collected in the manner hereinafter provided." (Italics ours.) It is conceded that the only question on this appeal is "whether the respondent was a car-loaning company operating upon railroads in this state within the meaning of the above-quoted section."

It is to be observed that the verb "operate" may be used either transitively or intransitively (*Rhodes* v. *Matthews,* 67 Ind. 131, 140), and that it is used here intransitively— *"operating upon* railroads in this state." (Italics ours.) This must be so, because the language of the section is not confined to car-loaning companies operating cars. If it had been intended to limit the scope of the taxing provisions to those companies which operated cars, language appropriate to a clear expression of such intention would presumably have been chosen. The American Universities New Unabridged Dictionary defines "operate," when used in the intransitive, as follows: "To have or produce a desired result or effect; to act effectively." And Funk & Wagnalls' Standard Dictionary gives to the word the meaning, "to effect any result; have agency; act." If we substitute one of these definitions for the word itself as it is used in the section, the context reads, "car-loaning companies . . . acting effectively upon railroads in this state." **[1]** The only interpretation which can reasonably be given to this portion of the section is that it authorizes the taxation in the manner prescribed of all car-loaning companies which are carrying on their business upon railroads in this state. **[2]** And, adopting this interpretation, we think that the plaintiff clearly comes within the purview of the section. While it is true that the only contract under which plaintiff's cars were sent into this state was executed outside of the state, nevertheless that contract was performed by the plaintiff by delivering cars over, and by permitting its lessee to use those cars upon, the railroads within the state. There is nothing in the section which requires that, in

order for a public service company to be taxable thereunder, all its business must be transacted within the state. The fact that a portion of plaintiff's business (the execution of its contracts.and all payments thereunder) is carried on outside of the state is immaterial in this connection. Likewise it is immaterial that the plaintiff does not use its cars in this state for the transportation of its own products, for it cannot be reasonably contended that the section relates only to cars so used when it expressly designates car-*loaning* companies. A car-loaning company obviously does not loan ,them to itself for the transportation of its own products.

Plaintiff cites *Wright* v. *Union Tank Line Co.*, 143 Ga. 765, [85 S. E. 994], to show that under these facts the plaintiff was not ''doing business'' in the state. The distinguishing feature of that case, however, was that the state of Georgia was endeavoring to collect from the plaintiff not only a tax upon tangible property, but also a tax upon its franchise to do business in Georgia. No such question is involved here.

Section 14 of article XIII was adopted by amendment in 1910. It was the result of a movement inaugurated in 1905 to separate the systems of state and local taxation. The first paragraph (from which we have quoted) provides that all taxes upon those public utilities which are enumerated therein shall be levied in the manner prescribed in the following subdivisions and shall be for state purposes only. Subdivision (a) prescribes the manner of collecting taxes on railroads, express companies, telegraph and telephone companies, gas and electric companies; subdivision (b) for taxes on insurance companies; subdivision (c) for taxes on banks, and subdivision (d) for taxes on franchises. The following rule of construction is enunciated in 12 Corpus Juris, at page 710: ''The court should look to the history of the times and examine the state of things existing when the constitution was framed and adopted, with a view to ascertaining its objects and purposes.'' In 1905 a commission was appointed by the Governor to devise a plan for the separation of state from local taxation. That commission reported in 1907, but the amendment which it recommended at that time failed of adoption at the general election of 1908. Another commission was appointed in

1909 "to recommend a plan for the revision and reform" of the "the system of revenue and taxation in force in this state." It was this commission, then, which formulated this amendment and presented it to the Governor in 1910 in the form of a report which reads (page 18) : "The amendment opens the way for a separation of state from local taxation. . . . The taxes reserved for the state are: . . . (2) On the property of . . . refrigerator car, and *all other car companies*. . . . " (Italics ours.) To hold that plaintiff, because of the terms of its contract with the Standard Oil Company under which it relinquished to the lessee the control over its cars, was not subject to the payment of the tax authorized by subdivision (a) would be in effect to hold that any concern conducting a business in this state of one of the classes enumerated in the section could evade the payment of this tax by entering into a similar arrangement by which it would receive the earnings of its property in the state while the control thereof was stipulated to be in a lessee.

Plaintiff has caused certain of its oil cars to come into California and to be hauled over and upon the railroads in this state. It is, therefore, in the language of the constitution, "operating upon railroads in this state."

Judgment reversed.

Olney, J., Shaw, J., Angellotti, C. J., Lennon, J., Wilbur, J., and Sloane, J., concurred.

Rehearing denied.

All the Justices concurred.