[Civ. No. 3986. Third Appellate District.—December 27, 1929.]

GUY WILKINSON, Petitioner, v. MATTIE LUND, Treasurer, etc., et al., Respondents.

Carr & Kennedy for Petitioner.

George F. Jones for Respondents.

FINCH, P. J.—This is an original application for a writ of mandate to compel the tax collector of Butte County to accept, in full payment of petitioner's taxes for the current fiscal year, a sum of money tendered by the petitioner and to issue an official receipt in full for such taxes. The sum so tendered is the amount of the petitioner's taxes, according to his contention, computed at the rate of "two dollars per hundred of the assessed valuation" of his property. The rate fixed by the board of supervisors is $3.15 on each $100 of the assessed value. The county is operating under a charter adopted pursuant to the provi-

sions of section 7½, article XI, of the Constitution. Article VIII, section 12, of the charter reads as follows:

"Beginning with the fiscal year 1919–1920, the state and county tax rate for the county of Butte shall be limited to two dollars per hundred of the assessed valuation of the property on the assessment roll of the county, provided that in case of an emergency the board of supervisors, by unanimous vote, may exceed this tax rate. The term emergency, as used in this section shall be limited to an act of God, such as flood, fire or earthquake or of the public enemy, which necessitates the replacement of county property destroyed." (Stats. 1917, p. 1803.)

No part of the taxes in question was levied to meet an emergency. The resolution of the board of supervisors fixing the tax rate reads as follows:

"Whereas, the board of supervisors of the county of Butte, acting under the provisions of section 3714 of the Political Code of the state of California, has heretofore, to-wit: on August 30, 1929, adopted a budget for the expenditures of the county of Butte, state of California, for the fiscal year 1929–1930 and

"Whereas, it is necessary to fix the rates of county and district taxes necessary to raise the amount of the estimated expenditures as finally determined in said budget,

"Now, therefore, it is hereby resolved that the tax rate for Butte county for the fiscal year 1929–1930 be and is hereby fixed as follows:

"County General Fund.................. .75
Salary Fund ......................... .30
Hospital Maintenance ................. .13
Junior College Tuition ............... .02
County Highway Maintenance ......... .18
General Reserve ...................... .01
Budgeted Reserve .................... .09
Elementary Schools .................. .48
High Schools ........................ .32
County Highway Bond Redemption .... .32
County Highway Bond Interest ........ .11
Road ................................ .40
Library ............................. .04

Total County Rate ..................$3.15"

It appears to be conceded, and necessarily so under various constitutional and statutory provisions, that the following rates, included in the foregoing total rate, are mandatory, the board of supervisors having no discretion as to the amounts to be raised for the purposes named:

> "Junior College Tuition ................ .02
> Elementary Schools ..........: ....... .48
> High Schools ....................... .32
> County Highway Bond Redemption .... .32
> County Highway Bond Interest ........ .11
>
> Total ...........................$1.25."

■ Respondents contend that the tax limitation quoted is not applicable to these mandatory taxes, but only to such taxes as are discretionary with the board of supervisors. The limitation appears to be too plain and certain in its terms to admit of such interpretation. (*Josselyn* v. *San Francisco,* 168 Cal. 436, 443 [143 Pac. 705].) The term "county tax rate" clearly includes all of the mandatory rates mentioned.

Respondents' further contention, however, that the Constitution does not authorize the county so to limit its tax rate by its charter presents a more serious question. Section 7½ provides:

"Any county may frame a charter for its own government consistent with and subject to the Constitution, . . . and relating to matters authorized by the provisions of the Constitution. . . . Such charter shall become the charter of such county and shall become the organic law thereof relative to the matters therein provided . . . and shall supersede all laws inconsistent with such charter relative to the matters provided in such charter."

■ It requires no argument to show that only such provisions of a county charter as are authorized by the Constitution supersede state laws in conflict therewith and then only to the extent that such provisions are not limited by the Constitution. Such a limitation is found in subdivision 4 of section 7½ authorizing provisions in a county charter:

"For the powers and duties of boards of supervisors and all other county officers, for their removal and for the consolidation and segregation of county offices, and for the

manner of filling all vacancies occurring therein; provided, that the provisions of such charters relating to the powers and duties of boards of supervisors and all other county officers shall be subject to and controlled by general laws.''

The limitation quoted is not modified or weakened by any other provision of section 7½. It is true that in subdivision 6 it is provided:

''Whenever any county has framed and adopted a charter, and the same shall have been approved by the legislature, as herein provided, the general laws adopted by the legislature in pursuance of sections 4 and 5 of this article, shall, as to such county, be superseded by said charter as to matters for which, under this section it is competent to make provision in such charter, and for which provision is made therein, except as herein otherwise expressly provided.''

Section 4, referred to in the language last quoted, provides that the legislature shall establish a system of county governments and, by general laws, provide for township organizations. Section 5 directs the legislature to provide for the election or appointment of boards of supervisors and other county officers and township officers and ''prescribe their duties and fix their terms of office.'' If it were not for the limitation contained in subdivision 4 of section 7½ it might be argued with much force that the provisions of a county charter supersede ''the general laws adopted by the legislature'' prescribing the duties of supervisors and other county officers, but since that subdivision expressly provides that such provisions, in so far as they relate to the duties of supervisors and other county officers, ''shall be subject to and controlled by general laws,'' such limitation must be construed to be one of the exceptions referred to in subdivision 6 as ''otherwise expressly provided.'' When the various provisions of section 7½ are construed as indicated herein they are in entire harmony.

A county may by charter impose duties upon supervisors and other county officers in addition to those prescribed by general laws but not inconsistent or in conflict therewith. The power of the legislature to enact general laws prescribing the duties of such officers is not affected or impaired by the constitutional provisions authorizing counties to frame and adopt charters for their own govern-

ment. (*Esberg* v. *Badaracco*, 202 Cal. 110 [259 Pac. 730];
*Nicholl* v. *Koster*, 157 Cal. 416 [108 Pac. 302].) "Whatever political autonomy a county may enjoy and whatever means it may employ in exercising self government must be consistent with the grants and limitations of such powers prescribed by the organic law of the state." (*Shay* v. *Roth*, 64 Cal. App. 314, 321 [221 Pac. 967, 970].)

"A county is a governmental agency or political subdivision of the state, organized for purposes of exercising some functions of the state government." (*County of San Mateo* v. *Coburn*, 130 Cal. 631, 636 [63 Pac. 78, 80, 621]; *Reclamation District No. 1500* v. *Superior Court*, 171 Cal. 672, 679 [154 Pac. 845].) "The authorities are quite uniform upon the proposition that all the powers and functions of a county government organization have direct and exclusive reference to the general policy of the state, and are, in fact, but a branch of the general administration of that policy." (*Singh* v. *Superior Court*, 44 Cal. App. 64, 66 [185 Pac. 985, 986].) "All the people of the state, while not directly interested in the administration of the affairs of municipal corporations of which they are not members, are so interested in the administration of the governmental affairs of a county, whether they reside or own property therein or not, because . . . such administration involves . . . the administration of the affairs and policy of the state." (*County of Sacramento* v. *Chambers*, 33 Cal. App. 142, 149 [164 Pac. 613]; *Central Pac. Ry. Co.* v. *Costa*, 84 Cal. App. 577, 586 [258 Pac. 991]; *Watson* v. *Greely*, 67 Cal. App. 328, 337 [227 Pac. 664].)

The state has expressly made it compulsory for a county to raise sufficient funds to maintain its public schools and pay its bonded indebtedness. All the people of the state are equally interested in the enforcement of law and order by every county, the administration of justice therein, the conduct of official business, the preservation of public health, the maintenance of hospitals, the support of the old and helpless, the care of dependent children, the protection of domestic animals against disease and of plant life against pests, the maintenance of highways and bridges, and the many other state functions which can be more efficiently exercised by the counties than by the state, but

which the state may at any time "resume and directly exercise." (7 Cal. Jur. 389.)

The state having delegated the exercise of these important functions to the several counties as state agencies, only the clearest language in the Constitution would warrant the conclusion that, by any of the terms thereof, it was intended to authorize a county, by its organic law, to defeat the purposes of the state by providing, directly or indirectly, that it will not exercise such functions. ▉ No one would attempt to uphold a provision in a county charter directly prohibiting the appropriation of public moneys for the preservation of the public health, the maintenance of hospitals, the support of indigents, the care of dependent children, or for the performance of other duties imposed upon counties by the state. Looking at substance rather than form, it seems equally clear that it is beyond the power of a county indirectly to repudiate its obligation to discharge such duties by providing in its charter for such a limitation of its tax rate as to render the performance of those duties impossible. If Butte County may so limit its tax rate to $2, no reason appears why it may not limit it to $1.25, which would raise only sufficient money to maintain its public schools and make the payments falling due on its bonded indebtedness and would render the county incapable of performing the other functions imposed upon it by the state. That a county may not so incapacitate itself is recognized in *Keyes* v. *San Francisco,* 177 Cal. 313, 324 [173 Pac. 475, 479], cited by petitioner, wherein it is said: "It is argued by respondent that the limitation on the rate of taxation cannot apply to taxes used for what are normally county purposes, because they are prescribed by the state, and no discretion as to their performance by the city and county of San Francisco would be permitted; consequently the dollar limit would apply only to taxation for municipal purposes, and it is not alleged that the tax rate for such purposes exceeds the limit. Granting that the city and county cannot by a limitation upon its tax rate disable itself from performing the functions properly imposed upon it by the state, it does not appear that the limit fixed in this instance is insufficient to enable such functions to be performed. The question of the due performance of county duties eliminated, the abstract right to

place a limit upon the rate of county taxation becomes unimportant.'' Granting that in order to raise a constitutional question a party must be interested and concerned in such question in a legal sense (5 Cal. Jur. 622), in this case it reasonably appears from an examination of the budget, showing the receipts and expenditures of the preceding fiscal year and the estimated receipts and expenditures for the current year, that the receipts from taxes at the maximum rate fixed by the charter, together with receipts from other sources, will be insufficient to enable the county to perform the functions imposed upon it by the state, and therefore the question here involved is not one of mere abstract right.

The limitation contained in subdivision 4 of section 7½ is clear and explicit. The fixing of the county tax rate is one of the duties of the board of supervisors. All inconsistency and confusion may be avoided by taking the constitutional limitation to mean exactly what it expressly provides, that the provisions of county charters ''relating to the powers and duties of boards of supervisors and all other county officers shall be subject to and controlled by general laws.''

Petitioner relies on *Burr* v. *San Francisco*, 186 Cal. 508 [17 A. L. R. 581, 199 Pac. 1034], *Josselyn* v. *San Francisco*, 168 Cal. 436 143 Pac. 705], *San Christina etc. Co.* v. *San Francisco*, 167 Cal. 762 [52 L. R. A. (N. S.) 67, 141 Pac. 384], and other similar cases. The question considered in those cases was not the validity of the tax limit in the San Francisco charter but the character of emergency which would justify a tax rate in excess of such limit. The decisions of those cases, therefore, throw little light upon the question involved herein.

The approval of the Butte County charter by the legislature has no bearing on the question of the validity of the tax limit therein. Since the legislature is without power directly by statute to relieve one county from obligations which it imposes on all others, it logically follows that it cannot do so by approval of a county charter which would indirectly accomplish the same thing.

For the reasons stated, it must be held that, in matters of taxation, boards of supervisors are controlled by general laws, and that the provision of the charter of Butte County purporting to limit the tax rate therein is invalid.

The petition for a peremptory writ of mandate is denied and the alternative writ is discharged.

Thompson (R. L.), J., and Plummer, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 25, 1930, and an application by petitioner to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 24, 1930.