[S. F. No. 14969. In Bank.—March 1, 1934.]

JACK REUTER, Petitioner, v. BOARD OF SUPERVISORS OF THE COUNTY OF SAN MATEO et al., Respondents.

Raymond J. O'Connor and W. H. Morrissey for Petitioner.

Edmund Scott and Richard O. Bell for Respondents.

Arthur H. Redington, Everett W. Mattoon, County Counsel (Los Angeles), J. H. O'Connor, Assistant County Counsel, Earl Warren, District Attorney (Alameda), Ralph E. Hoyt, Chief Assistant District Attorney, and Robert H. McCreary, as *Amici Curiae* on Behalf of Respondents.

CURTIS, J.—The county of San Mateo, acting under the authority of section 7½ of article XI of the Constitution of this state, framed a charter for its own government, which was approved by the legislature at its session in 1933. By this charter the office of county engineer was created: The offices of county surveyor and county engineer were consolidated, and the duties of the consolidated offices were directed to be performed by the incumbent county surveyor, with the proviso "that upon the termination of the present term of office of the surveyor, such office shall, *ipso facto,* become and be abolished, and the duties required by law to be performed by the surveyor shall thenceforth be performed by the engineer". (Sec. 5 of art. VI of said charter.)

Sections 1 and 2 of article I of said charter provide as follows:

"Sec. 1. Consolidation of Existing Road Districts. All existing road districts in the county are hereby consolidated into a single road district which shall comprise all of the territory lying within the county.

"Sec. 2. County engineer to be *ex-officio* road commissioner. The county engineer shall be, *ex-officio,* road commissioner of the existing road districts of the county, and of the consolidated road district in section 1 of this Article provided.''

The remaining sections of article IX outline specifically the duties of the county engineer, among which are those set forth in section 3 of said article IX as follows: "The county engineer as *ex-officio* road commissioner shall have and exercise the powers and perform the duties vested in road commissioners in pursuance of the general law, and such other powers and duties as may be vested in him in pursuance of the provisions of this charter.''

After the approval of this charter by the legislature and on July 31, 1933, the board of supervisors of said county, for the purpose of carrying into effect the provisions of article IX of said charter, passed an ordinance, as required by section 6 of said article, whereby the members of said board of supervisors relinquished as road commissioners their duties over the roads of said county. Thereafter the petitioner herein, a citizen, resident and taxpayer of said county, made written demand upon the board of supervisors that it resume its duties over the roads and highways of the county, as said duties are defined and directed to be performed by the general laws of the state. Upon the refusal of the board of supervisors to comply with this demand to resume jurisdiction over said roads and highways, petitioner instituted this proceeding before this court, in which he seeks to compel the board of supervisors, by writ of mandate, to assume jurisdiction and resume its duties over the roads and highways of the county. An alternative writ was issued to which the respondents have made their return, both by general demurrer and answer to the petition. The answer raises no issue of fact, so the questions presented are solely questions of law.

The power of the board of supervisors to relinquish jurisdiction over the public roads and highways of San Mateo County and the validity of its action in surrendering said jurisdiction to the county engineer are governed and must be determined by the section of the Constitution authorizing counties to frame and adopt charters for the government of their local affairs, and the charter of said county as framed

318

and adopted under said section of the Constitution. ██ Before discussing this question, however, we will consider a preliminary question raised by petitioner with relation to the right of the county surveyor of said county to discharge the duties of county engineer and to act as said county engineer. While the petitioner has alleged in an amendment to his petition that James S. James was not the county engineer of said county, he admits in his pleadings that James was, at the date of the adoption of said ordinance, the county surveyor of said county. We have already referred to provisions of the charter which created the office of county engineer and which provide that the offices of the county surveyor and county engineer shall be consolidated, and which provisions of the charter further provide that the duties of the consolidated offices should be performed by the incumbent county surveyor during his present term of office. In the light of these provisions of the charter we do not think there is any basis for the claim that James, who holds the office of county surveyor of the county is not also the county engineer of said county, as that office is provided for and created by the charter.

██ A further objection is made as to the manner in which James was selected to fill the position of county engineer.

There is a general provision of the charter to the effect that the appointment of certain officers of the county, including the county engineer, shall be made by the county executive, subject to confirmation by the board of supervisors. Petitioner contends that this provision of the charter was not complied with in the appointment of James as county surveyor. It is quite apparent that this general provision of the charter has no application to James' occupancy of the office of county engineer, under the express terms of the charter consolidating that office and the office of county surveyor then held by James. He holds the office of county engineer not by virtue of any appointment, but under the provisions of the charter consolidating the two offices and directing him to perform the duties of county engineer during the remainder of his term of office as county surveyor.

██ Petitioner bases his claim that the board of supervisors has exclusive jurisdiction over the roads and high-

ways of the county upon the contention that such jurisdiction is conferred upon the board by the general laws of the state, and that it has not been legally divested of that jurisdiction by the charter of said county. Respondents, upon the other hand, rely upon the provisions of the charter above referred to, and contend that by these sections of the charter the powers of road commissioners heretofore enjoined upon and performed by the several members of the board of supervisors have been taken from them and conferred upon the county engineer of the county. It is clear from the sections of the charter referred to above that at least an attempt was made by the framers of the charter, and by the people in their adoption thereof, to transfer the duties of road commissioners from the members of the board of supervisors to the county engineer, but petitioner contends that these provisions of the charter are rendered nugatory by the Constitution itself, which provides in subdivision 4 of section $7\frac{1}{2}$ "that the provisions of such charters relating to the powers and duties of boards of supervisors and all county officers shall be subject to and controlled by general laws." (Subd. 4, sec. $7\frac{1}{2}$, art. XI, Const.)

In support of his contention petitioner calls attention to the general laws of this state prescribing the duties of the boards of supervisors over the roads and highways as the same are contained in sections 2641, 2645 and 4041.7 of the Political Code. By these sections of the code each county of the state is divided into road districts, each supervisor is made *ex-officio* road commissioner of his district, and as *ex-officio* road commissioner, under the direction and supervision and pursuant to the orders of the board of supervisors, he is to take charge of the highways in his district, and shall employ all men, teams, watering cars and all help necessary to do the work in his district when the same is not let by contract.

The general laws making it the duty of members of boards of supervisors to act as road commissioners in their respective counties, as defined in the sections of the Political Code referred to above, appear to be in direct conflict with the provisions of the charter of San Mateo County providing for the appointment of a county engineer, who shall be *ex-officio* road commissioner of the whole county, with all

the powers and duties attached to said office of road commissioner, as well as further powers and duties over the roads and highways of the county conferred upon him by various provisions of the charter. Petitioner contends that by reason of this conflict between the general laws and the charter provisions the latter must give way under the proviso in subdivision 4 of section 7½ of article XI of the Constitution "that the provisions of such charters relating to the powers and duties of boards of supervisors and all other county officers shall be subject to and controlled by general laws."

The above proviso, relied upon by petitioner, occurs or is found in that part of section 7½ of article XI of the Constitution reading as follows: "It shall be competent, in all charters, framed under the authority given by this section, to provide, in addition to any other provisions allowable by this constitution, and the same shall provide for the following matters:

"4. For the powers and duties of boards of supervisors and all other county officers, for their removal and for the consolidation and segregation of county offices, and for the manner of filling all vacancies occurring therein; provided that the provisions of such charters relating to the powers and duties of boards of supervisors and all other county officers shall be subject to and controlled by general laws."

. From a mere reading of this provision of the constitutional section it is apparent that the proviso contained therein is inconsistent with and repugnant to the general provision of that portion of the section of which it is a part. The general provision of the section provides that it shall be competent in all charters framed under said section of the Constitution, and "the same shall provide" for the powers and duties of boards of supervisors and of all county officers. At the time of the adoption of said constitutional amendment the general laws of the state, with meticulous care, had fixed and defined the powers and duties of the board of supervisors and of each and every county officer in the state, except those acting under a city and county government, with which we are not here concerned. Therefore, if the powers and duties of boards of supervisors and county officers, as fixed by the charter, are "subject to and controlled by general laws", then any at-

tempt to provide for such powers and duties in the charter would be an idle act and a useless expenditure of effort. If these powers and duties as fixed by the charter conflicted in any way with those fixed by general laws then, if the proviso is to control, to the extent that they are inconsistent with those fixed by the general laws, they would be ineffective and void. If they did not so conflict with those fixed by the general laws, as we have said before, the charter provisions fixing said powers and duties, though valid, would simply amount to a re-enactment of that which was already the law—a mere superfluous or idle act. We do not think the framers of the amendment, nor the people of the state who ratified it, contemplated any such absurd result.

█ It is a cardinal rule in the interpretation of statutes and also of constitutional enactments that a construction should not be given to the statute or to the Constitution, if it can be avoided, which would lead to absurd results. (*Bakkenson* v. *Superior Court*, 197 Cal. 504, 511 [241 Pac. 874].)

"A construction should not be given to a statute, if it can be avoided, which would lead to absurd results or to a conclusion plainly not contemplated by the legislature." (*Merced Security Sav. Bank* v. *Casaccia*, 103 Cal. 641, 645 [37 Pac. 648, 649].) "In other words, where the meaning is doubtful, any construction which would lead to absurd results should be rejected, provided, of course, nothing stands in the way of a different and more rational construction, since absurd results are not supposed to have been contemplated by the legislature." (23 Cal. Jur. 766.)

█ Another rule of construction which we think can well be applied to the interpretation to be given to said constitutional provisions, is that regarding the extent and scope of a proviso. In California Jurisprudence, volume 23, page 744, it is said: "A proviso—the office of which is to explain, qualify or restrain the operation of a preceding provision—should be read in the light of the subject matter of the act, as well as in connection with the clause which it follows. As a general rule, a proviso which is clearly repugnant to the body of the act will be ignored, though, in accordance with the settled rule, it is the duty of the court to reconcile a proviso, when reconciliation is practicable, with an apparently conflicting provision so as

to carry into effect the intention of the lawmakers as it appears from the whole act and from contemporaneous legislation." "It would seem that the language there used could be construed as operative without nullifying these express provisions; but if this be not so, and the two provisions are contradictory, it is the proviso and not the principal part of the statute which must give way." (*City of Seattle* v. *Rothweiler,* 101 Wash. 680 [172 Pac. 825], and cases cited.) "Where the proviso is repugnant to the body or purview of the statute and cannot be reconciled therewith it is inoperative and void." (59 Cor. Jur., p. 1091.) "Where a proviso is repugnant or inconsistent with the purview of the act it is common learning that the latter must prevail." (*Gist* v. *Rackliffe-Gibson Const. Co.,* 224 Mo. 369 [123 S. W. 921, 927].) Applying the rule announced in these authorities we have no hesitancy in holding that the proviso as it appears in the provision of the constitutional amendment above quoted, and which is repugnant to the provision itself, is, to that extent void and should be ignored in construing said provision.

Another well-established rule of construction is that of contemporary construction. Following the adoption of section 7½ of article XI of the Constitution in 1911 conferring upon counties the right to frame charters for their own government, the counties of Los Angeles and San Bernardino each framed a charter which was approved by the legislature during its 1913 session. The charter of the county of Los Angeles created the office of county counsel, and assigned to that officer certain duties, which under the general law had theretofore been performed by the district attorney; also the office of registrar of voters, and assigned to that officer duties which under general law had theretofore been performed by the county clerk, and also the offices of superintendent of charities and purchasing agent, assigning to these officers duties which had theretofore been performed by the board of supervisors. The charter of the county of San Bernardino provided for a highway commissioner with powers and duties similar to those of road commissioner, and also a purchasing agent, and made it his duty to purchase all supplies required by the county and its officers, a duty theretofore performed by the board of supervisors. In 1917 the legislature approved a charter

prepared by the county of Butte and which provided for a county road engineer, whose duties are similar to those of the county engineer in the San Mateo County Charter. Other instances where the people of a county have framed a charter and the legislature has approved it, in which the powers and duties which, under the general laws, are to be performed by certain county officers, have been assigned to some newly created office, will be found in the statutes of the state. (Stats. 1927, p. 2029—County of Alameda; Stats. 1933, p. 3088—County of Sacramento.) It will thus be seen that the contemporaneous construction placed upon said constitutional provision by the legislature at its second session after the adoption of said constitutional amendment has been continued down to the present time. This construction, followed and acquiesced in for a period of more than twenty years, commencing soon after the adoption of said constitutional amendment, is not to be lightly regarded by the courts. It is a contemporary interpretation of a most forcible nature. In an early case this court so held and aptly stated the rule in the following language: "Contemporaneous exposition has ever been esteemed by jurists and statesmen as strong evidence in support of an interpretation or construction of a statute, or of a provision of the organic law in consonance with such exposition." (*Knowles* v. *Yates,* 31 Cal. 82, 89.) In a later case we approved the rule thus announced earlier in our judicial history, in the following language: "While the interpretation given to the act by the legislature is not controlling upon this court as to the meaning of a provision of the constitution, yet where it is doubtful the courts may, very properly, look to the contemporaneous interpretation given such provision, either by the legislature or the courts." (*Railroad Commrs.* v. *Market St. Ry. Co.,* 132 Cal. 677, 680 [64 Pac. 1065].)

In the case just cited the court quotes with approval the following from Endlich on the Interpretation of Statutes (sec. 527): "The greatest deference is shown by the courts to the interpretation put upon the constitution by the legislature in the enactment of laws and other practical application of constitutional provisions to the legislative business, when that interpretation has had the *silent* acquiescence of the people, including the legal profession and the judi-

ciary, and especially when injurious results would follow the disturbing of it. The deference due to such legislative exposition is said to be all the more signal when the latter is made almost contemporaneously with the establishment of the constitution, and may be supposed to result from the same views of policy and modes of reasoning that prevailed among the framers of the instrument thus expounded.''

These expressions from our decisions apply most aptly to the situation with which we are now confronted. As we have seen, the Constitution was amended in 1911, giving the counties the right to frame charters for their own government. In 1912 two counties of the state framed charters thereunder and presented the same for approval to the legislature at its session in 1913. They each contained provisions similar to that in the San Mateo County Charter, providing for the segregation of the duties of certain officers and the bestowal of a part of said duties upon offices newly created under the charter. The same may be said regarding the charters of Butte, Alameda and Sacramento Counties. The construction thus given to the constitutional amendment has continued for over twenty years, and almost from the date of its adoption, and no question has ever been raised, with one exception to be later mentioned, to the power of the county by charter to provide for the duties of its officers different from and inconsistent with those provided by the general laws. The contemporaneous construction thus accorded to the constitutional amendment by the legislature and those communities that have acted thereunder must, after the long lapse of time, in view of the doubtful meaning of its provisions, be held to have fixed and determined its meaning. The one exception above referred to will be found in the case of *Woolwine* v. *Superior Court*, 182 Cal. 388 [188 Pac. 569], where the provision of the charter of the county of Los Angeles was under attack, which created the office of county counsel and assigned to that officer certain duties theretofore performed by the district attorney. The case was decided upon another point and the court refused to pass upon the legality of the charter in so far as it created the office of county counsel. The decision was rendered in March, 1920, and

since that time, in so far as the records of the appellate courts reveal, the question has not been raised.

In the case of *More* v. *Board of Supervisors*, 31 Cal. App. 388 [160 Pac. 702], the court sustained the validity of the charter of the county of San Bernardino, consolidating the offices of sheriff and coroner. There is nothing in that decision anywise helpful in the solution of the question now before us. In *Wilkinson* v. *Lund*, 102 Cal. App. 767 [283 Pac. 385], the court declared illegal a provision of the charter of the county of Butte which fixed a maximum tax rate to be levied in said county for all purposes at two cents on the dollar. The principle upon which that decision was rendered was that a county may not incapacitate itself to perform public functions, the exercise of which has been delegated to it by the state, by providing in its charter such a limitation of its tax rate as to render the performance of such functions impossible. There is nothing in that decision at variance with the views above expressed, although there is certain language to be found in the opinion in that case which is in apparent conflict with our construction of said constitutional amendment. That language was in no way necessary to the decision and cannot be regarded as a judicial determination of the matters with which it purports to deal, and in so far as it conflicts with the views herein expressed is hereby disapproved. In that case the court was dealing entirely with public functions which had been delegated to the county by the Constitution, and which it was held the county could not by means of a charter incapacitate itself from performing. The present proceeding is not concerned with powers or duties of that character, but simply with matters of local or county concern, and, as we have seen, the duties of road commissioner are to take charge of the roads of his district, and under the direction of the board of supervisors to employ men and hire teams and other necessary help to carry on the road work in his district when the same is not let by contract. While the state may have a general interest in the roads and highways of the counties it is not concerned with the particular individual whose duty it is simply to employ the men and teams and other help necessary to construct and repair such roads and highways. These facts differentiate the present case from that wherein the charter of the county of Butte was

involved, and furnish a basis for our statement that there is nothing in the decision of the Butte County Charter case in conflict with our conclusion that a county charter may provide for powers and duties of county officers although such powers and duties, as fixed by the charter, may differ from and be in conflict with the powers and duties of such officers as provided by the general laws of the state.

The general purpose of section 7½ of article XI of the Constitution was to give local self-government or county home rule to counties of the state by means of charters framed under said constitutional amendment. That this was the intent and purpose of the section clearly appears from the language of the section itself, which declares that, after the charter has been approved by the legislature "such charter shall become the charter of such county and shall become the organic law thereof relative to the matters therein provided . . . and shall supersede all laws inconsistent with such charter relative to the matters provided in such charter." In the arguments prepared in support of said constitutional amendment and sent to the voters of the state immediately preceding the election at which the amendment was adopted it was said, among other things: "This proposal to amend the organic law occupying the second place on the official ballot for the ensuing special election on constitutional amendments, known as the 'County Home Rule Amendment', is a logical growth from the successful administration of 'charter cities' formed under the 'Home Rule' provisions of our constitution relating to municipalities." Continuing the arguments, it is expressly stated that "The main object of this amendment is to place the local government of each county in the hands of its citizens—in other words it is designed to give 'home rule' to counties. The state Constitution in section 5, article XI, authorizes the legislature to provide by general and uniform laws for the appointment or election of boards of supervisors . . . and other county . . . officers as public convenience may require and prescribe their duties, fix their term of office and their compensation. . . . The general frame and structure of all county charters must be uniform, and shall provide for the following matters only:

"(a) For boards of supervisors their election, number, term of office and compensation. Also for their general

regulation, their powers and duties, their removal from office and filling of vacancies.''

The people of the state in the adoption of this amendment had good cause to believe, and evidently did believe, that they were thereby providing a means whereby they might have home rule in their local and county affairs, including the right, in the words of the amendment, to provide for the powers and duties of their county officers. The amendment as adopted by them, when construed as a whole, is not only susceptible of such a construction, but cannot be given any other reasonable interpretation.

It is therefore our opinion that the provision of the charter of the county of San Mateo which transfers the duties of road commissioners from the members of the board of supervisors of said county to, and confers such duties upon, the county engineer, is a valid and constitutional charter enactment, and governs and determines the official of said county who shall perform and exercise such duties.

The petition is denied.

Langdon, J., Preston, J., Waste, C. J., Shenk, J., and Thompson, J., Concurred.