[Sac. No. 5166. In Bank.—January 17, 1939.]

THE CUDAHY PACKING COMPANY (a Corporation), Respondent, v. CHARLES G. JOHNSON, as Treasurer, etc., Appellant.

U. S. Webb, Attorney-General, H. H. Linney, James J. Arditto and Albert F. Zangerle, Deputies Attorney-General, and Dixwell L. Pierce for Appellant.

Thomas & Sullivan and E. H. Howlett for Respondent.

THE COURT.—This action was brought for the purpose of having an assessment declared void and to recover from the defendant, treasurer of the state of California, the amount of tax paid by plaintiff pursuant to said assessment. The tax was paid under protest.

Plaintiff operates plants in Los Angeles and San Diego, California, and at numerous points outside of the state of California, for the slaughtering of livestock and converting same into fresh meat and other products, and sells said products throughout the state of California and in other states, and maintains branch houses in a number of states of the United States, including two branch houses in the state of

California, and also maintains other distributing points for its products in said state of California; it owns a number of livestock, refrigerator and oil tank cars in which livestock and other food products belonging to said plaintiff are transported from points without and within the state of California to its various plants, branch houses and distributing points, both without and within said state; said cars are owned and used for the transportation of plaintiff's products in connection with and as an incident to the general business of said plaintiff for the convenience of its operations and for the purpose of securing adequate facilities for its general business from the various railroad companies for carrying its own property and products, and to that end during all of the times herein mentioned the various railroad companies have operated said cars over their respective lines, paying to plaintiff as its sole compensation for the use thereof on a mileage basis for said cars, and charging plaintiff the usual tariff rates for the transportation of its property and products therein.

Plaintiff has not at any time mentioned in the complaint in this action been engaged in the loaning or rental of said cars or any portion of them to the public at large but said cars are used by said railroads for the sole and exclusive purpose of transporting the property and products of the plaintiff, and neither the service rendered by the plaintiff, nor the rates charged by it for said service, have ever been regulated by the railroad commission of this state, or by any other regulatory body.

The tax against the property of plaintiff which it seeks to recover by this action was levied by the board of equalization pursuant to the purported authority contained in section 14 of article XIII of the Constitution as in force during all the times herein involved. Said taxes were levied and paid during the year 1934, and were based upon the earnings of its property during the fiscal year next preceding the year of said levy.

Section 14 (a) of article XIII of the Constitution of this state, then in force, in so far as it is pertinent to the question before us, reads as follows: "All refrigerator, oil, stock, fruit, and other car-loaning and other car companies, operating upon the railroads in this state . . . shall annually pay to the state a tax . . . "

That portion of the section with which we are concerned in this proceeding would read as follows: "Taxes levied, assessed and collected as hereinafter provided upon . . . refrigerator, oil, stock, fruit, and other car-loaning and other car companies operating upon the railroads in this state . . . shall be entirely and exclusively for state purposes and shall be levied, assessed and collected in the manner hereinafter provided."

Plaintiff, as stated herein, owns "a number of livestock, refrigerator and oil tank cars" which are used exclusively for the purpose of transporting its own products to various points within and without the state. These cars are operated over the railroads of the state under an agreement whereby the various railroads using said cars pay to the plaintiff as compensation for the use of said cars a definite sum per mile, in most instances 2 cents per mile for each mile traveled during the time the car is being used by the company. The plaintiff then pays to the railroad companies using its cars, the usual tariff rates for the transportation of its property and products in said cars.

While it is not conceded, it must be held from the facts found by the trial court, the substance of which is set forth above, that the plaintiff is not a public service corporation, or a public utility. It has never dedicated its property or business to the use of the public. By its contract with the railroad, its cars are to be used exclusively for the transportation of its own products, and not for those of the public at large. In defining a public utility, this court has said: "That the devotion to public use must be of such character that the public generally, or that part of it which has been served and which has accepted the service, has the right to demand that that service shall be conducted, so long as it is continued, with reasonable efficiency under reasonable charges." (Allen v. Railroad Com., 179 Cal. 68, 88 [175 Pac. 466, 8 A. L. R. 249]; Richardson v. Railroad Com., 191 Cal. 716, 720 [218 Pac. 418].)

In the case of Story v. Richardson, 186 Cal. 162 [198 Pac. 1057, 18 A. L. R. 750], this court held that the plaintiff therein, who was the owner of an office building and who had installed a plant for the generation of electricity and steam to be used by the tenants of the building, was not liable under the said section of the Constitution for a tax on his gross

receipts derived from the sale of electrical energy notwithstanding he supplied, as an incident to his business of furnishing his tenants with electricity, electrical energy to persons in his immediate neighborhood for light and power purposes. The basis of that decision was that the plaintiff was not a public utility and therefore did not come within the terms of said section of the Constitution. The court in that opinion reviewed at some length the history of said section of the Constitution, and, after referring to the fact that the Constitution was amended by the adoption of said section as a result of the appointment of a commission to investigate the then prevailing system of taxation and to recommend a plan for the revision thereof, called attention to certain specific portions of said report which indicated that the members of said commission had in mind only public utilities and certain corporations such as insurance companies and banks, the property of which should be taxed for state purposes. In that opinion, reference was also made to the argument submitted to the voters of the state at the time when said constitutional amendment was voted on in which the ''gross receipt'' method of taxation was advocated solely for public utilities. From this history of the amendment, as well as the language of the amendment itself, this court concluded: ''Throughout the report electrical companies were classified and discussed as one group of 'public utilities' to be taxed upon gross receipts. In the printed arguments submitted to the voters in 1910, at the time the constitutional amendment was voted upon, the 'gross receipts' method of taxation was advocated solely for public utilities. It is clear both from the report of the commission proposing the amendment and the arguments advanced to those voting upon the adoption of the amendment, as well as from the nature of the amendment, that the provision for taxation in proportion to gross receipts is applicable only to public utilities.'' Appellant admits the force and effect of this decision in so far as ''companies furnishing electricity'' are concerned, but claims that the tax on ''car-loaning companies'' was fixed and determined for an entirely different purpose than that which prompted the sponsors of said constitutional amendment to recommend that electrical companies be taxed for state purposes upon their gross receipts.

Appellant calls our attention and relies with considerable assurance in support of his contention upon that portion of the report of said commission contained in section 3 of chapter V of part III of the report of said commission which in part reads as follows: ''The taxation of companies operating their own cars over the railroads of the State is in an especially unsatisfactory condition. Except in the case of the Pullman Company, which is assessed by the State Board of Equalization, on the basis of the average number of cars which it operates in the State during the year, the only taxes levied are those assessed by the county assessors on such cars as happen to be found in the State on the first Monday in March. This, in spite of the fact that a considerable number of such cars find their way into the State during the year, amounts in actual practice to the taxation of those cars only which are owned or operated in California by some local company or agency, and a few scattering cars of other lines.''

It is evident from this section of the report of said commission, appellant argues, that car-loaning companies ''operating their own cars over the railroads of the state'' whether they were public utilities or only private car lines, by the system of taxation then in force were not paying their just proportion of taxes for the reason that only those cars which happened to be within the state on the first Monday in March of each year could be reached by the county assessor, and thereby made subject to taxation in this state. The report of the commission then called attention to the fact that ''a considerable number of such cars find their way into the State during the year'', with the result that only cars ''owned or operated in California by a local company or agency, and a few scattering cars of other lines'', are subject to taxation. Appellant contends that it was for the purpose of compelling these cars owned without the state but which were operated during the entire year within the state, to pay their just proportion of taxes, that refrigerator, oil, stock, fruit and other car-loaning companies were made subject to taxation for state purposes upon a basis of an *ad valorem* tax upon such cars as happened to be within the state on the first Monday in March. If, therefore, this was the purpose of applying the new system of taxation to such car companies, the reason therefor would apply to private car lines as well as to car companies that were rendering a public service. We

admit that there is much force in appellant's argument and we would be compelled to yield to its persuasive force were it not for other provisions of the report of the commission which seem to indicate that only public utilities were under consideration by the commission.

The commission, after a lengthy discussion of the then prevailing, and the proposed new systems of taxation, made certain recommendations in which the property of the state was to be divided into two separate classes, one of which would be subject to taxation for state purposes only, and the other for county and city purposes. Part III of said report is entitled, "Proposals and Recommendations", and chapter IV of part III is devoted to, "Taxation of Railroads". Chapter V of part III is concerned with, "Taxation of Public-Service Corporations Other Than Railroads", and section 3 of this chapter is devoted to, "The Taxation of Car Companies". It is in this section 3 that we find the quotation above set out on which the appellant relies in support of his contention that respondent is liable for a tax upon its property for state purposes even if it is not a public service corporation. As the subject of taxation of "companies operating their own cars over the railroads of the state" is found only in that section of the report which is devoted to, "Taxation of Public-Service Corporations Other Than Railroads", it is apparent that the commission in preparing that part of its report was considering only public service corporations, and as this is the only portion of the report which could possibly be construed as evidencing an intent on the part of the members of the commission to recommend a tax for state purposes upon the property of private corporations "operating its own cars upon the railroads of the state", the only reasonable construction to be given that section of the report is that it referred exclusively to public service corporations or public utilities, and not to private corporations.

This report of the commission was the basis upon which section 14 of article XIII was framed and submitted to the voters of the state. In fact, this section of the Constitution with immaterial changes was prepared by the very same commission that made said report. We may, therefore, consider the terms and provisions of the report in determining the meaning of the constitutional amendment which was the outgrowth of said report. (*Story* v. *Richardson, supra.*)

As the provisions of the report clearly show that the commission had under consideration only public service corporations whose property should be assessed for state purposes upon a basis of their gross receipts, we must conclude that this intention was carried into the amendment of the Constitution which the commission was instrumental in preparing, and, therefore, that the amendment does not apply to property of a private corporation such as the plaintiff's.

Appellant has cited the case of *Union Tank Line Co.* v. *Richardson,* 183 Cal. 409 [191 Pac. 697], in support of its contention that respondent's property is subject to taxation for state purposes. The question of whether the Union Tank Line Company, the plaintiff in said action, was or was not a public utility, was not raised in that action although the court held that it was a car-loaning company as defined in said section of the Constitution. There are certain statements in the opinion, notably the following: "There is nothing in the section (of the Constitution) which requires that, in order for a public service company to be taxable thereunder, all its business must be transacted within the state," which clearly indicate that the court in determining the liability of the Union Tank Line Company to be taxed for state purposes, acted upon the theory that said plaintiff was a public service corporation and was, therefore, answerable under said section of the Constitution for the taxes sued for in that action. In that opinion it was stated, "The company (The Union Tank Line Company) was engaged in the acquiring by purchase or otherwise of oil-tank cars and the leasing thereof to shippers throughout the United States." The Union Tank Line Company was evidently a public service corporation, or at least the court in that opinion assumed that it was such.

Under the rule of contemporary construction we are further fortified in construing said section of the Constitution so as to exempt plaintiff's property from taxation for state purposes. In the case of *Reuter* v. *Board of Supervisors,* 220 Cal. 314, 323 [30 Pac. (2d) 417], this court in commenting upon said rule stated: " 'Contemporaneous exposition has ever been esteemed by jurists and statesmen as strong evidence in support of an interpretation or construction of a statute, or of a provision of the organic law in consonance with such exposition.' " Section 14 of article XIII of the

Constitution was adopted, as we have seen, in 1910. The reports of the state board of equalization disclose that the Cudahy Packing Company was assessed as a car company in 1914, on the basis of its gross receipts from operations in 1913, in the amount of $1612.23 on which a tax of $64.48 was computed. Whether this tax was paid or not, the record in this case does not show. We assume, however, that it was paid. After the year 1914, and until the present assessment was made, covering a period of nineteen years, no assessment was made against the plaintiff herein for state purposes based upon its gross receipts. It is not denied that during this period respondent paid an *ad valorem* tax upon its tangible property within the state. Just why no assessment was made for state purposes does not appear, but we are justified in assuming from these facts that the officers of the state construed said section of the Constitution as not applying to the plaintiff herein. This contemporaneous construction of said section of the Constitution by the authorities of the state charged with the duty of collection of the revenues of the state, while not controlling, is entitled to great respect. (23 Cal. Jur. 775.)

The judgment is affirmed.